ACCEPTED
04-15-00433-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/17/2015 7:25:15 PM
KEITH HOTTLE
CLERK

NO. 04-15-00433-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/17/2015 7:25:15 PM
KEITH E. HOTTLE
Clerk

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY and
POST OAK CLEAN GREEN, INC.,

*Appellants,*

v.

GUADALUPE COUNTY GROUNDWATER
CONSERVATION DISTRICT,

*Appellee.*

## BRIEF OF APPELLANT POST OAK CLEAN GREEN, INC.

Christopher L. Dodson
State Bar No. 24050519
chris.dodson@bgllp.com
Mark R. Wulfe
State Bar No. 24088681
mark.wulfe@bgllp.com
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

John A. Riley
State Bar No. 16927900
jriley@jgdpc.com
JACKSON GILMOUR & DOBBS, PC
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
Telephone: (512) 574-8861
Facsimile: (512) 574-8861

ATTORNEYS FOR APPELLANT POST OAK CLEAN GREEN, INC.

## ORAL ARGUMENT REQUESTED

## IDENTITIES OF PARTIES AND COUNSEL

### *Defendants-Appellants*

Texas Commission on Environmental Quality ("Commission" or "TCEQ")
Post Oak Clean Green, Inc. ("Post Oak")

### *Counsel for the Commission*

Ken Paxton
Charles E. Roy
Scott A. Keller
Bill Davis
Nancy Elizabeth Olinger
Cynthia Woelk
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Telephone: (512) 936-1896
Facsimile: (512) 370-9191

### *Counsel for Post Oak*

Christopher L. Dodson
Mark R. Wulfe
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

John A. Riley
JACKSON GILMOUR & DOBBS, PC
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
Telephone: (512) 574-8861
Facsimile: (713) 355-5001

***Trial Counsel for the Commission***

Mark L. Walters
Nancy Elizabeth Olinger
David Preister
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, MC-066
Austin, Texas 78711
Telephone:  (512) 463-2012
Facsimile:   (512) 320-0911

***Trial Counsel for Post Oak***

Peter J. Stanton
LAW OFFICES OF PETER J. STANTON
111 Soledad, Suite 1350, Riverview Towers
San Antonio, Texas 782025
Telephone:  (210) 472-0500
Facsimile:   (210) 472-0515

Christopher L. Dodson
Robert D. Ayers
Kelley L. Clark
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 223-2300
Facsimile:   (713) 221-1212

John A. Riley
JACKSON GILMOUR & DOBBS, PC
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
Telephone:  (512) 574-8861
Facsimile:   (512) 574-8861

***Plaintiff-Appellee***

Guadalupe County Groundwater Conservation District ("District")

***Counsel for the District***

Marisa Perales
FREDERICK, PERALES, ALLMON & ROCKWELL, PC
707 Rio Grande, Suite 200
Austin, Texas 77552-6894

***Trial Counsel for the District***

Marisa Perales
FREDERICK, PERALES, ALLMON & ROCKWELL, PC
707 Rio Grande, Suite 200
Austin, Texas 77552-6894

# TABLE OF CONTENTS

*Page*

IDENTITIES OF PARTIES AND COUNSEL ........................................................ i

INDEX OF AUTHORITIES.......................................................................... vii

RECORD REFERENCES .............................................................................. xi

STATEMENT OF THE CASE........................................................................ xii

STATEMENT REGARDING ORAL ARGUMENT ........................................ xiii

ISSUES PRESENTED.................................................................................. xiv

INTRODUCTION ........................................................................................1

STATEMENT OF FACTS .............................................................................1

    A.    Description Of The Parties And Statutory And Regulatory Background ........................................................................................1

        1.    The Commission and its relevant authority ...............................1

        2.    The District and its relevant authority .....................................3

        3.    Post Oak ...............................................................................4

    B.    Post Oak's Application To The Commission For A Municipal Solid Waste Permit........................................................................4

    C.    The Process For Permitting Municipal Solid Waste Facilities In Texas...........................................................................................5

    D.    The District's Ongoing Opposition To Post Oak's Permit Before The Commission...........................................................................6

    E.    The District's Efforts To Subvert The Commission's Permitting Process Through The Trial Court Proceedings Below........................7

        1.    The District's claims ..............................................................7

2.      The parties' dispositive motions and the trial court's rulings.................................................................................9

SUMMARY OF THE ARGUMENT ........................................................................10

STANDARD OF REVIEW .......................................................................................11

ARGUMENT .............................................................................................................11

I.      The Trial Court Lacks Subject Matter Jurisdiction Because The District's Claim Is Not Ripe. .......................................................................11

    A.      The District's claimed injury is impermissibly speculative................12

    B.      Neither the trial court's reasoning nor the District's arguments below justify a contrary ruling. ........................................................15

II.     The Trial Court Lacks Subject Matter Jurisdiction Because the Commission Has Exclusive Jurisdiction Over The Siting Of Municipal Solid Waste Landfills..................................................................17

    A.      The pervasive regulatory scheme indicates that the Legislature intended the Commission to have exclusive jurisdiction over the siting of municipal solid waste landfills......................................18

    B.      Limited local authority over solid waste facilities does not defeat the Commission's exclusive jurisdiction.............................22

    C.      The District's proper recourse is clear: exhaust its administrative remedies..................................................................24

III.    Alternatively, The Trial Court Lacks Subject Matter Jurisdiction Over The District's Claim Because The Commission Has Primary Jurisdiction.................................................................................................25

IV.     District Rule 8.1 Cannot Be Enforced Through the UDJA..........................27

PRAYER ...................................................................................................................28

CERTIFICATE OF SERVICE .................................................................................29

CERTIFICATE OF COMPLIANCE ..................................................................30

APPENDIX ...............................................................................................31

# INDEX OF AUTHORITIES

*Page(s)*

***Cases***

*Beacon Nat'l Ins. Co. v. Montemayor*,
   86 S.W.3d 260 (Tex. App.—Austin 2002, no pet.)..............................................26

*Bexar-Medina-Atascosa Counties Water Control & Improvement*
   *Dist. No. 1 v. Medina Lake Prot. Ass'n*,
   640 S.W.2d 778 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)...................12

*Blue Cross Blue Shield of Tex. v. Duenez*,
   201 S.W.3d 674 (Tex. 2006) .........................................................................17

*Butnaru v. Ford Motor Co.*,
   84 S.W.3d 198 (Tex. 2002)...........................................................................25

*Cash Am. Int'l, Inc. v. Bennett*,
   35 S.W.3d 12 (Tex. 2000).............................................................................26

*City of Anson v. Harper*,
   216 S.W.3d 384 (Tex. App.—Eastland 2006, no pet.).....................13, 14, 15, 16

*City of San Antonio v. Butler*,
   131 S.W.3d 170 (Tex. App.—San Antonio 2004, pet. denied)..........................11

*In re Entergy Corp.*,
   142 S.W.3d 316 (Tex. 2004) .........................................................................17

*Foree v. Crown Cent. Petroleum Corp.*,
   431 S.W.2d 312 (Tex. 1968) .........................................................................26

*Hardee v. City of San Antonio*,
   No. 04-07-00740-CV, 2008 WL 2116251 (Tex. App—San
   Antonio May 21, 2008, no pet.) (mem. op.).....................................................12

*J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*,
   871 S.W.2d 842 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ..............9

*Jordan v. Staff Water Supply Corp.*,
   919 S.W.2d 833 (Tex. App.—Eastland 1996, no writ) ....................................25

*Key Western Life Ins. Co. v. State Bd. of Ins.*,
   350 S.W.2d 839 (Tex. 1961) ...................................................................................24

*Kinney v. Palmer*,
   04-07-00091-CV, 2008 WL 2515696 (Tex. App.—San Antonio
   June 25, 2008, no pet.) (mem. op.) ........................................................................9

*MacDonald, Sommer & Frates v. Yolo County*,
   477 U.S. 340 (1986)...............................................................................................15

*Mayhew v. Town of Sunnyvale*,
   964 S.W.2d 922 (Tex. 1998) ..................................................................................15

*McDaniel v. Tex. Natural Res. Conservation Comm'n*,
   982 S.W.2d 650 (Tex. App.—Austin 1998, pet. denied) ........................................20

*Monk v. Huston*,
   340 F.3d 279 (5th Cir. 2003) ...............................................................13, 14, 15, 16

*Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*,
   971 S.W.2d 439 (Tex. 1998) ..................................................................................11

*Rawls v. Tex. Comm'n on Envtl. Quality*,
   No. 11-05-00368CV, 2007 WL 1849096 (Tex. App.—Eastland
   June 18, 2007, no pet.) ...........................................................................................20

*Smith v. City of Brenham, Tex.*,
   865 F.2d 662 (5th Cir. 1989) ...............................................................14, 15, 16

*Smith v. Houston Chem. Servs., Inc.*,
   872 S.W.2d 252 (Tex. App.—Austin 1994, pet. withdrawn)..................................19

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*,
   84 S.W.3d 212 (Tex. 2002)....................................................................................17

*In re Sw. Bell Tel. Co.*,
   226 S.W.3d 400 (Tex. 2007) (orig. proceeding) ...................................................26

*Tex. Dept. of Pub. Safety v. Moore*,
   985 S.W.2d 149 (Tex. App.—Austin 1998, no pet.)..............................................25

*Page(s)*

*Tex. Natural Res. Conserv. Comm'n v. IT-Davy,*
  74 S.W.3d 849 (Tex. 2002).............................................................11

*Tex. State Bd. of Veterinary Med. Examiners v. Giggleman,*
  408 S.W.3d 696 (Tex. App.—Austin 2013, no pet.)........................................27

*Thomas v. Long,*
  207 S.W.3d 334 (Tex. 2006) ...........................................................17

*Waco Indep. Sch. Dist. v. Gibson,*
  22 S.W.3d 849 (Tex. 2000)........................................................12, 16

**Statutes**

TEX. ADMIN. CODE § 293 ...............................................................21

TEX. ADMIN. CODE § 330 ......................................................2, 5, 6, 19

TEX. CIV. PRAC. & REM. CODE § 37 ............................................... xii, 27

TEX. CIV. PRAC. & REM. CODE § 51 ............................................... xii, 10

TEX. HEALTH & SAFETY CODE § 361 .........................................2, 5, 19, 26

TEX. HEALTH & SAFETY CODE § 363 ........................................5, 20, 22, 23

TEX. HEALTH & SAFETY CODE § 364 ................................................22

TEX. SPEC. DIST. CODE § 8833 .....................................................3

TEX. WATER CODE § 5 ..............................................................1, 6

TEX. WATER CODE § 26 ............................................................2, 20

TEX. WATER CODE § 36 ..........................................................3, 4, 21

***Other Authorities***

GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT,
*About Us, available at* http://gcgcd.org/about.html ........................................7, 21

*Guadalupe County Groundwater Conservation District*, GUADALUPE
COUNTY GROUNDWATER CONSERVATION DISTRICT
(Nov. 10, 2011), *available at*
http://gcgcd.org/uploads/3/4/6/6/3466695/gcgcd_rules.pdf................................8

## **RECORD REFERENCES**

In this brief, "CR" refers to the clerk's record and "1RR" to the reporter's record of the November 4, 2014 hearing.

## STATEMENT OF THE CASE

*Nature of the case*

This is an interlocutory appeal of the trial court's denial of the Commission's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (West 2015). It centers on the scope of authority of the Commission and the District, respectively, concerning the siting of Post Oak's proposed municipal solid waste landfill. The proposed landfill is the subject of an ongoing multi-year permit application process before the Commission, and the Commission's decision regarding Post Oak's application for a permit is pending. The District filed this lawsuit seeking a declaration that the District's administrative Rule 8.1, prohibiting the application of waste and sludge over an aquifer outcrop, prevents the construction and operation of Post Oak's proposed landfill, regardless of the outcome of the Commission's permitting process.

*Trial Court*

2nd 25th District Court of Guadalupe County, Texas, Hon. W.C. Kirkendall

*Course of Proceedings & Dispositions Below*

The District sued Post Oak under the Uniform Declaratory Judgments Act ("UDJA"), Tex. Civ. Prac. & Rem. Code ch. 37, seeking a declaration that Post Oak had violated District Rule 8.1 in connection with its pending application for a permit from the Commission for a landfill that, if issued, would be located within the District's territory. CR.1193-1204 (live petition). Post Oak filed a plea to the jurisdiction, CR.15-23, and the District moved for partial summary judgment, CR.25-156; 552-765. The trial court denied Post Oak's jurisdictional plea. CR.548-51. The Commission then intervened, CR.1045-48, and filed its own plea to the jurisdiction, CR.1081-1132. The trial court denied the Commission's plea, CR.1218, and granted the District's motion for partial summary judgment, CR.1179-92. Post Oak and the Commission each timely appealed the denial of the Commission's plea. CR.1223-25, 1228-31.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves multiple jurisdictional grounds for dismissal. Accordingly, Post Oak believes oral argument is likely to be helpful to the Court's resolution of the appeal.

# ISSUES PRESENTED

1. Did the trial court err in denying the Commission's plea to the jurisdiction because the District's claim is not ripe?

2. Did the trial court err in denying the Commission's plea to the jurisdiction because the Commission has exclusive (or, alternatively, primary) jurisdiction over the siting of municipal solid waste landfills?

3. Did the trial court err in denying the Commission's plea to the jurisdiction because the District's Rule 8.1 cannot be enforced through the UDJA?

# INTRODUCTION

In this declaratory-judgment action, the District seeks to frustrate Post Oak's application for a permit to construct and operate a landfill currently pending with the Commission. During the nearly four years that Post Oak's application has been under review, the District has actively participated in the process, opposing the application before the Commission. Such involvement is contemplated by the regulatory scheme, which invites input from interested parties regarding permit applications. This lawsuit, on the other hand, is nothing more than an impermissible bid to subvert the regulatory process before it is complete. The District's attempt is both premature, as its claim is not ripe, and impermissible, as it asks this court to invade the exclusive jurisdiction given to the Commission by the Texas Legislature regarding the siting of municipal solid waste landfills. Accordingly, the Court should reverse the trial court's order denying the Commission's plea to the jurisdiction and render a judgment of dismissal.

# STATEMENT OF FACTS

A. *Description Of The Parties And Statutory And Regulatory Background*

**1. The Commission and its relevant authority**

The Commission is the state agency "given primary responsibility for implementing the constitution and laws of this state relating to the conservation of natural resources and the protection of the environment." TEX. WATER CODE §

5.012. (West 2015). Consequently, it is the "principal authority in the state on matters relating to the quality of the water in the state." *Id.* § 26.127(a). "All other state agencies engaged in water quality or water pollution control activities [must] coordinate those activities with the [C]ommission." *Id.*

The Commission is also charged with the "management of municipal solid waste." TEX. HEALTH & SAFETY CODE § 361.011(a) (West 2015). Pursuant to the Solid Waste Disposal Act ("Act" or "SWDA"), the Commission "shall coordinate municipal solid waste activities, . . . controlling all aspects of the management of municipal solid waste . . . by all practical and economically feasible methods consistent with its powers and duties under [the Act] and other law." *Id.* § 361.011(a)-(b). One such method is the issuance of permits for the construction, operation, and maintenance of municipal solid waste landfills. *Id.* § 361.061.

In discharging its responsibilities under the SWDA, the Commission exercises its authority over water quality in the state. The Act provides that "[i]n matters relating to municipal solid waste management . . . the [C]ommission "shall consider water pollution control and water quality aspects." *Id.* § 361.011(d). The Commission fulfills this responsibility in part by requiring information relating to groundwater protection to be included in applications for municipal solid waste landfill permits, as well as by providing for the monitoring of groundwater once landfills are operational. *See, e.g.*, 30 TEX. ADMIN. CODE §§ 330.61(c), (d), (j), (k)

(application requirements); 330.63(f), 330.401(a), (b), (e), (f) (monitoring requirements).

## 2. The District and its relevant authority

Another means available to the Commission in carrying out its responsibilities is the creation and supervision of groundwater conservation districts. TEX. WATER CODE § 36.011. The Commission "has exclusive jurisdiction over the creation of [such] districts" and, under certain circumstances, may direct their activities or dissolve them. *Id.* §§ 36.011(b), 36.303(a).

The District is one such groundwater conservation district. *See* TEX. SPEC. DIST. CODE § 8833.002 (2013). It "has the rights, powers, privileges, functions, and duties provided by the general law of this state, including Chapters 36 and 49 [of the Texas] Water Code," applicable to groundwater conservation districts, with the exception that it may not impose taxes or certain fees. *Id.* §§ 8833.101, 8833.102.

Through Chapter 36 of the Texas Water Code, groundwater conservation districts are delegated the authority to manage and control groundwater production and may do so by regulating the spacing of water wells" and "the production from water wells." TEX. WATER CODE § 36.001(1). Districts exercise this authority through rulemaking and permitting. A district "shall require a permit for the drilling, equipping, operating, or completing of wells or for substantially altering

the size of wells or well pumps." *Id.* § 36.113(a). Additionally, a district may regulate the spacing of water wells and the production of groundwater "[i]n order to minimize as far as practicable the drawdown of the water table or the reduction of artesian pressure, to control subsidence, to prevent interference between wells, to prevent degradation of water quality, or to prevent waste." *Id.* § 36.116. More generally, a district

> may make and enforce rules, including rules limiting groundwater production based on tract size or the spacing of wells, to provide for conserving, preserving, protecting, and recharging of the groundwater or of a groundwater reservoir or its subdivisions in order to control subsidence, prevent degradation of water quality, or prevent waste of groundwater and to carry out the powers and duties provided by [Chapter 36].

*Id.* § 36.101(a).

### 3. Post Oak

Post Oak is a closely held private corporation that has pending with the Commission an application for a permit to construct and operate a municipal solid waste landfill on private land within the District's territory.

### B. *Post Oak's Application To The Commission For A Municipal Solid Waste Permit*

In December 2011, approximately two and half years before the District brought this suit, Post Oak applied for a municipal solid waste landfill permit from the Commission. CR.605-765. Pursuant to the requirements of the SWDA, Post Oak submitted detailed information to the Commission regarding the geology of

-4-

the site, groundwater, floodplains and wetlands on the site, and land uses of the surround area, among other site-specific information. *Id.* The administrative review process before the Commission regarding Post Oak's permit application is ongoing, now having lasted almost four years. CR.1206-07.

**C. *The Process For Permitting Municipal Solid Waste Facilities In Texas***

As authorized by the Legislature, the Commission's municipal solid waste permitting process is comprehensive, implicating numerous specific regulations and statutory provisions. The SWDA and regulations promulgated under it govern this process. TEX. HEALTH & SAFETY CODE §§ 361.001 *et. seq*. The Commission's permitting and related requirements are found in sections 330.1-330.1221 of Title 30 of the Texas Administrative Code. Specific law regarding local governmental entity regulation of municipal solid waste facilities in Texas is found in the Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act ("Comprehensive Act"). TEX. HEALTH & SAFETY CODE §§ 363.001 *et seq.*

The review process for Post Oak's permit application ("Application") involves a technical review of the Application conducted by the Commission, requests for additional clarifying materials and information from Post Oak, Commission-led public meetings where comments on the Application from members of the community are solicited and received, the Commission's review of

-5-

and responses to public comments, and a contested case hearing that is presently pending before the State Office of Administrative Hearings. 30 Tex. Admin. Code §§ 330.1-330.1221; CR.1206-07.

The final agency decision on the Application will be made only after a contested case hearing process, which involves a full evidentiary hearing on the merits of the Application before an Administrative Law Judge, who will then make a detailed recommendation on the matter to the Commission. *See generally* TEX. WATER CODE ch. 5.

**D.** ***The District's Ongoing Opposition To Post Oak's Permit Before The Commission***

The District is actively participating in the permitting process at the State Office of Administrative Hearings and the Commission. Two years before it brought this lawsuit, the District commented to the Commission that the proposed municipal solid waste facility presented risks of contamination of the Carrizo and Wilcox aquifers, Nash Creek, and the Guadalupe River. CR.59-64. At a Commission-led public meeting in March 2014, a month before this suit was filed, the District continued its participation, advocating that Post Oak should not be able to site the municipal solid waste facility on top of what the District asserts is the

-6-

"outcrop of the upper Wilcox [aquifer]."[1] CR. 1200. This suit centers on the same issues the District has raised with the Commission through the permitting process, generally the suitability of the proposed landfill site. The District has warned that it "intends to participate in any contested case hearing to ensure that the appropriate science is brought to the attention to the Administrative Law Judge and [the Commission]." CR.1107.

E.    *The District's Efforts To Subvert The Commission's Permitting Process Through The Trial Court Proceedings Below*

1.    **The District's claims**

Approximately two and a half years after the Commission's permitting process began, the District filed this lawsuit, asserting that District Rule 8.1 prohibits the construction of municipal solid waste facilities at the proposed site. CR.4-14. In other words, the District seeks to deny Post Oak the ability to use a permit issued by the Commission, should one eventually be granted.

District Rule 8.1, which is captioned "Solid, Hazardous or Radioactive Wastes," provides as follows:

> All persons generating, transporting, disposing, applying, or otherwise managing substances defined under state or federal law as solid,

---

[1] The outcrop of the Wilcox aquifer is a miles-wide band that stretches from Laredo to Texarkana. The outcrop effectively covers the entire jurisdiction of the District. *See* GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT, *About Us* (last two maps on page), *available at* http://gcgcd.org/about.html.

hazardous, or radioactive waste, or as sludge, must follow any and all applicable federal, state, and local environmental statutes, requirements, and regulations, including, but not limited to those imposed under the Solid Waste Disposal Act (RCRA), the Public Health Service Act (the Safe Drinking Water Act), the Federal Water Pollution Control Act (the Clean Water Act), the National Environmental Policy Act, the Atomic Energy Act and the Low-Level Radioactive Waste Policy Act, as those statues, requirements or regulations are administered by the appropriate agency, including but not limited to the Texas Railroad Commission, the Texas Commission on Environmental Quality, the Texas Department of Health, or their successors, and the Environmental Protection Agency. In the event that applicable statutes, requirements, or regulations require that the person generating, transporting, applying disposing or otherwise managing a waste or a sludge obtain a permit from an agency, and where those activities occur within the boundaries of the District, notice of an application must be provided to the District by the applicant within ten days of the application. In no event may waste or sludge be permitted to be applied in any manner in any outcrop area of any aquifer within the [District].

CR.577-78; *see also Rules of the Guadalupe County Groundwater Conservation District*, GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT (Nov. 10, 2011), *available at* http://gcgcd.org/uploads/3/4/6/6/3466695/gcgcd_rules.pdf.

Despite acknowledging the Commission is the "appropriate agency" to administer the SWDA, the Rule goes on to prohibit the operation of waste facilities within its jurisdiction, stating, that "[i]n no event may waste or sludge be permitted to be applied in any manner in any outcrop area of any aquifer within the [District]." CR.577-78.

In its First Amended Original Petition (the live petition), the declaratory relief sought by the District is limited to a judgment "declaring that operation of a

-8-

landfill at the location proposed by [Post Oak] on the outcrop of the Upper Wilcox Aquifer violates District Rule 8.1." CR.1193-1204.[2]

### 2. The parties' dispositive motions and the trial court's rulings

Post Oak filed a plea to the jurisdiction, arguing that the District's claim was not ripe and that the District had failed to exhaust its administrative remedies. CR.15-23. The District moved for partial summary judgment, CR.25-156, before responding to Post Oak's plea, CR.490-501. In its response to the jurisdictional plea, the District conceded "the District may exercise its right to participate in [a contested case] hearing [regarding Post Oak's permit application] as an affected person" and that, should the Commission grant the permit, "the District may exhaust its administrative remedies and seek judicial review of that agency decision." CR.496. The trial court denied Post Oak's plea.

The Commission then intervened and filed its own plea to the jurisdiction, asserting that the case must be dismissed on ripeness grounds and because the

---

[2] The District's Original Petition additionally sought a judgment declaring Post Oak to have violated District Rule 8.1 by failing to notify the District of its permit application. CR.4-14. "[A]n amended petition which omits causes of action previously alleged serves to dismiss these claims from the amended pleading." *Kinney v. Palmer*, 04-07-00091-CV, 2008 WL 2515696, at *2 (Tex. App.—San Antonio June 25, 2008, no pet.) (mem. op.) (citing *J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*, 871 S.W.2d 842, 844 (Tex. App.—Houston [14th Dist.] 1994, writ denied)).

Commission has exclusive (or, alternatively, primary) jurisdiction over the management of municipal solid waste. CR.1082-99.

The trial court granted the District's motion for partial summary judgment, CR.1179-92, and, on June 23, 2015, denied the Commission's plea to the jurisdiction without further written opinion, CR.1218. Post Oak and the Commission both timely appealed from the order denying the Commission's plea. CR.1223-25, 1228-31, attached in Appendix, Tab A; *see* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (West 2015).

## SUMMARY OF THE ARGUMENT

The trial court lacks subject matter jurisdiction over this suit because the District's claim is not ripe and the Commission has exclusive (or, alternatively, primary) jurisdiction over the siting of municipal solid waste landfills.

The harm alleged by the District cannot come to pass unless Post Oak's permit application—still pending with the Commission—is granted. The District acknowledges this reality. Three courts have held expressly that until such a permit is issued any alleged harm caused by the landfill is hypothetical and thus unripe for judicial review. Additionally, as the District seeks to prevent the operation of the landfill, attempting to effectively usurp the Commission's permitting authority, a judgment in its favor would improperly interfere with the Commission's exclusive (or, alternatively, primary) jurisdiction. The

-10-

Commission's jurisdiction over the subject matter of this dispute is made clear by the pervasive regulatory scheme delegating to the Commission responsibility for the siting of municipal solid waste landfills. Finally, even if the District's claim is ripe and the judgment requested would not interfere with the Commission's exclusive or primary jurisdiction, the claim cannot be enforced through the UDJA because District Rule 8.1 is an administrative rule, as opposed to a statute or municipal ordinance.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to determine the subject matter of the suit. *Tex. Natural Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Jurisdiction is a question of law, and the Court reviews a trial court's ruling on subject matter jurisdiction *de novo*. *Id.* The plaintiff bears the burden of pleading sufficient facts that affirmatively establish the court's jurisdiction. *City of San Antonio v. Butler*, 131 S.W.3d 170, 174 (Tex. App.—San Antonio 2004, pet. denied).

## ARGUMENT

I. **The Trial Court Lacks Subject Matter Jurisdiction Because The District's Claim Is Not Ripe.**

A court lacks subject matter jurisdiction if a claim is not ripe. *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Under the ripeness doctrine, courts "consider whether, *at the time a lawsuit*

*is filed*, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000) (internal quotation marks omitted). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.*

Applied to suits for declaratory judgments, the ripeness doctrine provides that a "declaratory judgment is appropriate only if there is a justiciable controversy about the rights and status of the parties and the declaration will resolve the controversy." *Hardee v. City of San Antonio*, No. 04-07-00740-CV, 2008 WL 2116251, at *1 (Tex. App—San Antonio May 21, 2008, no pet.) (mem. op.). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779-80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.).

## A.    *The District's claimed injury is impermissibly speculative.*

Texas law makes clear that no justiciable controversy exists in this case because Post Oak does not yet have the right to construct the landfill in the District's territory. The trial court cannot assume jurisdiction over the District's

claim solely because the Commission might at some point grant a municipal solid waste landfill permit to Post Oak. Several cases are directly on point, including three that have addressed ripeness in the context of a permit for a landfill pending with the Commission.

The precise question of the ripeness of a claim alleging harm based on a permit for a landfill still pending with the Commission was addressed in *City of Anson v. Harper*, 216 S.W.3d 384, 389-91 (Tex. App.—Eastland 2006, no pet.). There, the plaintiffs sought damages and equitable relief stemming from a city's proposal to build a municipal solid waste landfill on land where they owned mineral rights. *Id*. at 387-88. The city argued that the plaintiffs' claims were not ripe because "its landfill permit application was still pending before the TCEQ." *Id.* at 389-90. The court agreed:

> The City has filed a permit application with the TCEQ. This application may or may not be granted. Unless and until the City receives a permit, it cannot construct or operate a landfill. Plaintiffs acknowledged during oral argument that there are contingencies because of the permit-application process . . . . What *might* happen if the City's permit application is approved does not present a ripe controversy, and the trial court does not have jurisdiction to hear a claim based upon future events.

*Id.* at 390 (emphasis added).

In reaching its decision, the court relied on two Fifth Circuit cases that "found a controversy over a proposed landfill was not ripe because regulatory approval of the landfill was still pending." *Id.* (citing *Monk v. Huston*, 340 F.3d

-13-

279 (5th Cir. 2003); *Smith v. City of Brenham, Tex.*, 865 F.2d 662 (5th Cir. 1989)); *see also id.* ("Texas courts have traditionally relied upon federal decisions when determining ripeness questions because of their experience in this area of the law."). The court explained that in *Smith* and *Monk*, "neighboring landowners filed suit to enjoin further development of proposed landfills. In both cases, permit applications were pending before state agencies. Because the permit applications were still pending, the construction and operation of a landfill was merely a possibility; consequently, plaintiffs had not yet suffered actual damage." *Id.* (citing *Monk*, 340 F.3d at 283; *Brenham*, 865 F.2d at 663-64).

The situation here is the same as in *Harper*, *Monk*, and *Brenham*. The District concedes that Post Oak may not begin construction of the proposed landfill until and unless it has been issued a permit by the Commission. Indeed, on the face of its pleading, the District (1) admits that the Commission's application process is ongoing and incomplete and (2) highlights its active involvement in a Commission-led process, including, for example, its participation in a Commission hearing only weeks before filing this lawsuit. CR.1199 (alleging what would occur to the landfill "if permitted and constructed"); CR.1200 ("During this meeting, the District once again informed TCEQ, via public comment, that the Landfill Applicant's proposed landfill was located on the outcrop of the upper Wilcox, in violation of the District's rules."). The District's attorney

-14-

acknowledged to the trial court that the proposed landfill "has not been permitted," explaining, "[i]t's still being reviewed by [the Commission]; but were it to be permitted, it would allow for construction of a landfill." 1RR.5.

As in *Monk*, "[t]he application may or may not be granted, and thus [the District] may or may not be harmed. Therefore, until the TCEQ issues the permit, this dispute remains abstract and hypothetical and thus unripe for judicial review." 340 F.3d at 283. Put simply, this case has already been decided three times, each time against the existence of subject matter jurisdiction.

**B.** ***Neither the trial court's reasoning nor the District's arguments below justify a contrary ruling.***

In its response to the Commission's plea, the District asserted without citation that "a justiciable controversy exists because Post Oak has already conceded that it is seeking from TCEQ a permit to construct and operate a solid waste landfill on the outcrop of the Carrizo-Wilcox aquifer." CR.1163 The District's argument is no different than that made by the plaintiffs in *Harper*, *Monk*, and *Brenham*. It is squarely contradicted by the case law. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998) (stating that a regulatory takings claim cannot be ripe without "a final and authoritative determination of the type and intensity of development legally permitted on the subject property" (quoting *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 348 (1986)).

-15-

Although the trial court denied the Commission's plea to the jurisdiction without a written opinion, it offered its rationale for finding the District's claims to be ripe in its order on Post Oak's plea. The court stated, in full: "Post Oak also argues the District has not been injured because any injury is 'uncertain and contingent on future events.' However, Post Oak has clearly indicated their intention to build a waste disposal site and has not attempted any compliance with the District's rule. This dispute is undoubtedly ripe." CR.550-51.

As explained above, ripeness depends not on a person's or entity's "intention," but rather on the existence of a "concrete injury," one not "depend[ent] on contingent or hypothetical facts, or upon events that have not yet come to pass." *Gibson*, 22 S.W.3d at 851-52. And as demonstrated in *Harper*, *Monk*, and *Brenham*, where a permit for a landfill is still pending with the Commission, any alleged harm caused by the proposed landfill is "abstract and hypothetical and thus unripe for judicial review." *Monk*, 340 F.3d at 283 (internal quotation marks omitted). Accordingly, the trial court's order denying the Commission's plea to the jurisdiction should be reversed and the District's suit dismissed for lack of subject matter jurisdiction.

**II.** **The Trial Court Lacks Subject Matter Jurisdiction Because the Commission Has Exclusive Jurisdiction Over The Siting Of Municipal Solid Waste Landfills.**

When exclusive agency jurisdiction exists, a trial court lacks subject matter jurisdiction and is required to dismiss the claims within the agency's exclusive jurisdiction. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). "An administrative agency has exclusive jurisdiction when the Legislature grants it the sole authority to make an initial determination in a dispute." *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 675 (Tex. 2006). "[I]n such matters, a complaining party must exhaust administrative remedies before seeking review in district court." *Id.*

"An agency has exclusive jurisdiction when 'a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'" *Id.* at 676 (alteration in original) (quoting *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004)). "A party cannot circumvent an agency's exclusive jurisdiction by filing a declaratory-judgment action if the subject matter of the action is one 'over which the Legislature intended the [administrative agency] to exercise exclusive jurisdiction.'" *Id.* (alteration in original) (quoting *Thomas v. Long*, 207 S.W.3d 334, 342 (Tex. 2006)).

Here, the trial court erred in denying the Commission's plea to the jurisdiction because the Legislature has set forth a pervasive regulatory scheme providing the Commission with exclusive jurisdiction regarding the siting of municipal solid waste landfills. The District's lawsuit seeks a holding that should Post Oak's proposed facility be sited as proposed in its permit application it would violate District Rule 8.1. As the District seeks to prevent the operation of the landfill, attempting to effectively usurp the Commission's permitting authority, a judgment in its favor would improperly interfere with the Commission's exclusive jurisdiction.

**A.** ***The pervasive regulatory scheme indicates that the Legislature intended the Commission to have exclusive jurisdiction over the siting of municipal solid waste landfills.***

Through numerous rules and regulations, the Texas Legislature has clearly indicated its intent for the Commission to be exclusively responsible for the siting of municipal solid waste landfills. The SWDA makes the Commission "responsible . . . for the management of municipal solid waste," requiring the Commission to "coordinate municipal solid waste activities" and "control[] *all* aspects of the management of municipal solid waste . . . by all practical and economically feasible methods consistent with its powers and duties under [the Act] and other law." TEX. HEALTH & SAFETY CODE § 361.011(a)-(b) (emphasis added). The SWDA gives the Commission all "powers necessary or convenient to

-18-

carry out [its] responsibilities under [the Act]." *Id.* § 361.011(c). In carrying out these obligations, the Commission issues permits for the construction, operation, and maintenance of municipal solid waste landfills. *Id.* § 361.061.

The SDWA's regulatory scheme is further supported by detailed regulations. 30 TEX. ADMIN. CODE. ch. 330. These regulations include an exhaustive list of information that must be included in applications, ranging from maps identifying "all known water wells within 500 feet of the proposed permit boundary," *id.* § 330.61(c)(2), to "flow diagrams indicating the storage, processing, and disposal sequences for the various types of wastes and feedstocks received," *id.* § 330.63(b)(2)(A). Permit applications must be extremely detailed so as to "provide the executive director data of sufficient completeness, accuracy, and clarity to provide assurance that operation of the site will pose no reasonable probability of adverse effects on the health, welfare, environment, or physical property of nearby residents or property owners." *Id.* § 330.57(d).

Courts have consistently recognized the Commission's exclusive authority in this area. For example, in *Smith v. Houston Chemical Services, Inc.*, the Third Court of Appeals held that the trial court erred in rendering judgment denying an application for a permit under the SWDA. 872 S.W.2d 252, 258 (Tex. App.— Austin 1994, writ denied). The court stated plainly that "[t]he granting or denying of an application under the Act is an executive function committed exclusively to

-19-

the Commission." *Id.*; *see also Rawls v. Tex. Comm'n on Envtl. Quality*, No. 11-05-00368CV, 2007 WL 1849096, at \*2 (Tex. App.—Eastland June 18, 2007, no pet.) (noting that the claimant conceded the "TCEQ has exclusive jurisdiction over standard permits"); *McDaniel v. Tex. Natural Res. Conservation Comm'n*, 982 S.W.2d 650, 653 (Tex. App.—Austin 1998, pet. denied) (explaining that the SWDA gives the Commission "general authority over municipal solid waste, allowing the agency to control and manage all aspects of municipal solid waste by all practical means as long as such methods are consistent with its powers and duties under the Act").

The primacy of the Commission's authority is reflected in other statutes as well. The Comprehensive Act, for example, gives the Commission the power to implement and enforce that act's provisions regarding the management of municipal solid waste. TEX. HEALTH & SAFETY CODE § 363.022(a). The Commission's authority is also reflected in the Water Code, which provides that "no person may . . . discharge . . . municipal waste . . . into or adjacent to any water in the state" "*[e]xcept as authorized by the [C]ommission*." TEX. WATER CODE § 26.121(a)(1) (emphasis added).

Plainly, the District, an entity "subject to the continuing right of supervision by the State of Texas, by and through the [Commission]," cannot legitimately seek to undermine years of Commission work as well as the Commission's permitting

-20-

authority by appealing to the courts for judgments rendering Commission permits ineffective.  30 TEX. ADMIN. CODE. § 293.3(a).

In considering whether the District exceeded its authority by attempting to ban waste facilities within its geographic boundaries,[3] it is instructive to consider how other groundwater conservation district rules address waste facilities in the context of "prevent[ing] degradation of water quality."  *See* TEX. WATER CODE § 36.101(a).  As set forth above, the District's Rule 8.1 prohibits waste or sludge from being "applied in any manner in any outcrop area of any aquifer within the [District]," which the District maintains precludes disposal in a municipal solid waste facility located in the outcrop area.  CR.577-78.  In contrast, the Garza County Underground Water Conservation District's comparable Rule 8, entitled "Place of Drilling a Well," provides that "[a] well shall be located a minimum horizontal distance of 150 feet from any tight sewage facility and liquid waste collection facility."  *See* Garza County District Rule 8(a), attached in Appendix, Tab B.  Similarly, the Evergreen Underground Water Conservation District prohibits a well from being "located within five-hundred (500) feet of a sewage

---

[3] The boundaries of the District are essentially aligned with those of the outcrop area of the Carrizo-Wilcox aquifer.  *See* GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT, *About Us* (last two maps on page), *available at* http://gcgcd.org/about.html.

treatment plant [or] solid waste disposal site[.]" *See* Evergreen District Rule 6.3(b), attached in Appendix, Tab C.

Unlike the Garza County and Evergreen Districts' rules that address the placement of a water well near an existing waste facilities, here District Rule 8.1 categorically prohibits the siting of a municipal solid waste facility within the District's geographic boundaries, no matter how carefully designed and monitored to prevent infiltration of contaminants into the subsurface. Thus, instead of regulating water withdrawals that might affect water quality, the District seeks to regulate Commission-sanctioned activities. In short, the District wishes to extend its regulatory authority to an outright prohibition on landfills within its geographic boundaries, regardless of the fact that the Commission goes to great lengths to ensure that these facilities are not a threat to the environment in general and groundwater in particular.

### B. *Limited local authority over solid waste facilities does not defeat the Commission's exclusive jurisdiction.*

The Legislature has given municipalities and counties—but not groundwater conservation districts—limited authority to prohibit solid waste disposal in designated areas. *See* TEX. HEALTH & SAFETY CODE §§ 363.112, 364.012 (relating to the authority of *municipalities and counties* to adopt ordinances prohibiting the disposal of solid waste in certain areas of a *municipality or county*). Even municipalities and counties may only prohibit the siting of a municipal solid waste

landfill in certain areas of the municipality or county by "specifically designat[ing] the area of the municipality or county, as appropriate, in which the disposal of municipal or industrial solid waste disposal *will not be prohibited.*" *Id.* § 363.112(a) (emphasis added). Therefore, even if the District had some limited authority to regulate the siting of waste facilities—which it does not—District Rule 8.1 does not comport with state laws that give local governments authority to designate areas in which disposal and processing facilities are prohibited only if they designate areas where these facilities will not be prohibited. Nothing in the Comprehensive Act can reasonably be interpreted to grant the District the authority to adopt a ban on waste disposal and processing sites within its geographic boundaries.

The Comprehensive Act's provisions regarding the prescribed authority of some local governmental bodies', namely counties' and municipalities', abilities to prohibit the disposal of solid waste in certain geographic areas draw into sharp relief how the judgment requested by the District would impermissibly interfere with the Commission's authority to approve the siting of waste facilities. As discussed, the provision allowing these governmental entities to prohibit the processing or disposal of solid waste within their boundaries also requires that they permit such activities in other areas. Tex. Health & Safety Code § 363.112(a). Thus, when the Legislature has given certain local governments the authority to

control the citing of waste disposal facilities, it has also ensured that they cannot prohibit the processing and disposal of solid waste within their boundaries altogether.

In this regard, the *Comprehensive* Act would be of little value were groundwater conservation districts able to prohibit "waste" from being "permitted to be applied in any manner" by obtaining judgments effectively declaring Commission permits invalid over great swaths of territory. CR.577-78. The decision whether to permit a municipal solid waste facility requires a balancing of complex policy considerations and an exercise of legislative-flavored discretion. *See*, *Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 850 (Tex. 1961). The Commission is in charge of that balancing test, equipped to account for concerns raised by the District and any other stakeholders, as well as for the environmental protections of modern waste disposal facilities.

### C. *The District's proper recourse is clear: exhaust its administrative remedies.*

The Commission's exclusive jurisdiction over municipal solid waste permitting does not prohibit the District from being heard. Indeed, the District has conveyed the same concerns it raises in this lawsuit in comments submitted to the Commission in the ongoing public participation process. CR.59-64, 1200. The District cannot now circumvent the administrative review process entirely by seeking to obtain a declaration regarding the legality of the proposed landfill. *See*

-24-

*Tex. Dept. of Pub. Safety v. Moore*, 985 S.W.2d 149, 156-57 (Tex. App.—Austin 1998, no pet.) (providing UDJA cannot be used to "circumvent" the exclusive administrative remedies provided by statute). Proceeding with this lawsuit would avoid the very process designed to address the District's concerns, effecting a judicial intrusion into the Commission's exclusive jurisdiction over the siting of municipal solid waste landfills.

## III. Alternatively, The Trial Court Lacks Subject Matter Jurisdiction Over The District's Claim Because The Commission Has Primary Jurisdiction.

To the extent the Court finds the Commission does not have exclusive jurisdiction over the District's claim, the doctrine of primary jurisdiction also warrants reversal of the trial court's order. The Supreme Court of Texas has described this doctrine as follows:

> [T]he primary jurisdiction doctrine requires trial courts to allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 208 (Tex. 2002). The doctrine assures that an agency "will not be by-passed on what is especially committed to it, and because resort to the courts is still open after the agency has acted." *Jordan v. Staff Water Supply Corp.*, 919 S.W.2d 833, 835 (Tex. App.—Eastland 1996, no writ)

(quoting *Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312 (Tex. 1968)); *see also Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 271 (Tex. App.— Austin 2002, no pet.) (holding that deference to an agency ensures it will decide, at least initially, matters that require "special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact" (quoting *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000)). When a court determines that primary jurisdiction applies, the proceeding is typically abated while the agency resolves the issues committed to it. *See*, *e.g.*, *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 404 (Tex. 2007) (orig. proceeding).

The Commission has the particularized expertise to determine the environmental protection issues presented by the District's lawsuit. Given this expertise, the Commission is singularly situated to determine the issue central to the District's purported ban on municipal solid waste facilities and other waste operations, namely whether the site proposed by Post Oak is well-suited for use as a municipal solid waste facility. As addressed above, the SWDA specifically commits all landfill permitting authority to the Commission. *See* TEX. HEALTH & SAFETY CODE § 361.011 (granting powers and duties necessary or convenient to carrying out responsibilities for managing municipal solid waste). Accordingly, if the District's claim does not fall within the Commission exclusive

-26-

jurisdiction, the doctrine of primary jurisdiction nonetheless requires dismissal of the claim for lack of subject matter jurisdiction.

## IV.  **District Rule 8.1 Cannot Be Enforced Through the UDJA.**

Even if the District's claim is ripe and the judgment requested would not interfere with the Commission's exclusive or primary jurisdiction, its claim is not properly made under the UDJA because District Rule 8.1 is an administrative rule, as opposed to a statute or ordinance.

The UDJA allows for claims challenging the construction of a "statute" or "municipal ordinance," but not an agency rule.  TEX. CIV. PRAC. & REM. CODE § 37.004  ("A person . . . whose rights, status or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder.").  Any declaration the District "purports to seek [which] concern[s] the proper construction of the [District's] rules, as opposed to a statute . . . falls outside the UDJA altogether." *See Tex. State Bd. of Veterinary Med. Examiners v. Giggleman*, 408 S.W.3d 696, 707 (Tex. App.—Austin 2013, no pet.).

**PRAYER**

For these reasons, Appellant Post Oak Clean Green, Inc. prays that the Court reverse the trial court's order denying the Commission's plea to the jurisdiction and render judgment dismissing the District's claim. Appellant also prays for such further relief to which it may be entitled.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: /s/*Christopher L. Dodson*
    Christopher L. Dodson
    State Bar No. 24050519
    chris.dodson@bgllp.com
    Mark R. Wulfe
    State Bar No. 24088681
    mark.wulfe@bgllp.com
    BRACEWELL & GIULIANI LLP
    711 Louisiana Street, Suite 2300
    Houston, Texas 77002-2770
    Telephone: (713) 223-2300
    Facsimile: (713) 221-1212

    John A. Riley
    State Bar No. 16927900
    jriley@jgdpc.com
    JACKSON GILMOUR & DOBBS, PC
    1115 San Jacinto Blvd., Suite 275
    Austin, Texas 78701
    Telephone: (512) 574-8861
    Facsimile: (512) 574-8861

    ATTORNEYS FOR APPELLANT,
    POST OAK CLEAN GREEN, INC.

## CERTIFICATE OF SERVICE

I certify that a copy of the Brief of Appellant, Post Oak Clean Green, Inc., was served on counsel of record by EFile as follows on the 17th day of September 2015, addressed as follows:

Mr. Ken Paxton                                                  VIA EFILE
Mr. Charles E. Roy
Mr. Scott A. Keller
Mr. Bill Davis
Ms. Nancy Elizabeth Olinger
Ms. Cynthia Woelk
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Telephone:  (512) 936-1896
Facsimile:   (512) 370-9191
*Attorneys for Texas Commission on Environmental*
*Quality  and Post Oak Clean Green, Inc.*

Ms. Marisa Perales                                            VIA EFILE
FREDERICK, PERALES, ALLMON & ROCKWELL, PC
707 Rio Grande, Suite 200
Austin, Texas 77552-6894
*Attorneys for Guadalupe County Groundwater*
*Conservation District*

/s/*Christopher L. Dodson*
Christopher L. Dodson

-29-

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limitations of TEX. R. APP. P. 9.4(i)(3) because this brief consists of 6,184 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

/s/*Christopher L. Dodson*
Christopher L. Dodson

# APPENDIX

Order of June 23, 2015.......................................................................................A

Garza County District Rule 8(a) ......................................................................B

Evergreen District Rule 6.3(b).........................................................................C

# Tab A

CAUSE NO. 14-0863-CV

| | | |
|---|---|---|
| GUADALUPE COUNTY | § | IN THE DISTRICT COURT |
| GROUNDWATER CONSERVATION | § | |
| DISTRICT, | § | |
| Plaintiff, | § | |
| v. | § | GUADALUPE COUNTY, TEXAS |
| | § | |
| POST OAK CLEAN GREEN, INC., | § | |
| Defendant. | § | 25TH JUDICIAL DISTRICT |

## ORDER

Before the Court is the Texas Commission on Environmental Quality's (TCEQ)

Plea to the Jurisdiction. Having considered the Plea to the Jurisdiction, the responses

thereto, and the other relevant papers on file with the Court, it is hereby ORDERED

that TCEQ's Plea to the Jurisdiction is:

_____ Granted:   All Plaintiff's claims are dismissed for lack of jurisdiction.


__X__ Denied:


Signed this _____ day of _____, 2015.


THE HONORABLE W.C. KIRKENDALL
JUDGE PRESIDING

# Tab B

After an application for a well permit has been granted, the well, if drilled, must be drilled within ten yards of the location specified in the permit, and not elsewhere. If the well should be commenced or drilled at a different location, the drilling or operation of such well may be enjoined by the Board pursuant to Chapter 36, Texas Water Code.

[a]   A well shall be located a minimum horizontal distance of 150 feet from any water tight sewage facility and liquid waste collection facility.

[b]   A well shall be located a minimum horizontal distance of 150 feet from any contamination, such as existing or proposed livestock or poultry yard, privies, and septic absorption field.

[c]   A well shall be located at a site not generally subject to flooding; provided, however, that if a well must be placed in a flood prone area, it shall be completed with a watertight sanitary well seal and steel casing extending to a minimum of 24 inches above the known flood level.

## RULE 9 -- REWORKING OR REPLACING OF WELL

[a] No person shall rework, redrill, or re-equip a well in a manner that would increase the rate of production of water from such well beyond any previous normal rate of production of such well without first having made an application to the Board, and having been granted a permit by the Board to do so. Nor shall any person replace a well without a permit from the Board. A replacement well, in order to be considered as such, must be drilled within one hundred fifty (150) feet of the old well and not elsewhere. It must not be located toward any other well or authorized well site unless the new location complies with the minimum spacing requirements set out in Rule 6 [a]; otherwise the replacement well shall be considered to be a new well for which application must be made under Rule 5 above. Provided, however, that the Board may grant an exception without notice or hearing in any instance where the replacement well is placed farther away from any existing wells or authorized well sites.

The location of the old well (the well being replaced) shall be protected in accordance with the spacing rules of the District until the replacement well is drilled and tested. The landowner or his agent must within 120 days of the issuance of the permit declare in writing to the District which one of these two wells he desires to produce. If the landowner does not notify the District of his choice within this 120 days, then it will be conclusively presumed that the new well is the well he desires to retain. Immediately after determining which well will be retained for production the other well shall be:

10

# Tab C

## RULE 5.12 MONITORING DEVICES:

All production facilities or wells subject to the requirements of this Subsection shall be equipped with production monitoring devices approved by the District and available for District inspection at any time during normal business hours. An hour meter may be considered as a production monitoring device on the well, if the well output (gpm) can be accurately determined.

## SECTION 6. OTHER DISTRICT ACTIONS AND DUTIES

## RULE 6.0 ANNUAL REPORTING FOR UN-PERMITTED, NON-EXEMPT WELLS:

a.   **Reporting:** Within 15 days of December 31, 2003, and annually there after, the owners or operators of all non-exempt wells shall file a report to the District the volume of groundwater produced for the previous calendar year, the use of the groundwater, and the aquifer from which the water was produced. The report shall be filed on the appropriate form(s) provided by the District.

b.   **Monitoring Devices:** All production facilities or wells subject to the requirements of this Subsection shall be equipped with production monitoring devices approved by the District and available for District inspection at any time during normal business hours. An hour meter may be considered as a production monitoring device on the well, if the well output (gpm) can be accurately determined.

c.   **Non-compliance of Reporting:** Failure to file the required reports shall result in forfeiture of withdrawal rights. The Board may, at its discretion, require a non-compliant well owner to apply for a permit for the well or prohibit further withdrawals from the well.

## RULE 6.1 DISTRICT MANAGEMENT PLAN:
The District Plan specifies the acts, procedures, and performance necessary to prevent waste and protect rights of owners or interest in groundwater, and forms the basis of these rules and permit requirements imposed by the Board. The Board will review and amend the plan as necessary, and when the Board considers a new plan necessary or desirable, a new plan may be adopted.

## RULE 6.2 REGISTRATION OF NEW WELLS:

a.   It is a violation of these rules for a well owner, well operator, or water well driller to drill any well without an approved registration form filed with the District.

b.   All new wells must be registered by the well owner, well operator, or water well driller prior to being drilled. Registration may be by mail or telephonic document transfer, using a form provided by the District. The District staff will review the registration and make a preliminary determination on whether the well meets drilling and production permit exclusions or exemptions provided in Rule 5.3, and must inform the registrant of their determination within five business days. If the preliminary determination is that the well is excluded or exempt from requiring a drilling and operating permit, the registrant may begin drilling immediately upon receiving the approved registration.

## RULE 6.3 LOCATIONS OF WELLS:

a.   After an application for a well permit has been granted, the well, if drilled must be drilled within thirty (30) feet of the location specified in the permit.

b.   A well shall be located a minimum horizontal distance of fifty (50) feet from any water-tight sewage or liquid-waste collection facility.

c.   A well shall be located a minimum horizontal distance of one hundred and fifty (150) feet from any concentrated sources of contamination, such as existing or proposed livestock or poultry yards, privies, underground storage tanks, and septic system absorption fields. If this distance can not be accommodated within the limits of the applicant's property, the

1-23-09

applicant may apply for a spacing exception in accordance with Rule 5.6. In no case may a well be located less than fifty (50) feet from any concentrated sources of contamination.

**d.**   A well shall be located at a site not generally subject to flooding; provided, however, that if a well must be placed in a flood prone area, it shall be completed with a watertight sanitary well seal and steel casing extending a minimum of twenty-four (24) inches above flood level.

**e.**   No well shall be located within five-hundred (500) feet of a sewage treatment plant, solid waste disposal site or land irrigated by sewage plant effluent, or within three-hundred (300) feet of a sewage wet well, sewage pumping station or drainage ditch which contains industrial waste discharges or wastes from sewage treatment systems.

## RULE 6.4 MINIMUM STANDARDS OF WELL COMPLETION:

**a.**   The annular space between the borehole and the casing shall be filled from ground level to a minimum depth of twenty (20) feet with cement.

**b.**   A concrete slab or sealing block shall be placed above the cement around the casing at the ground surface.

**1.** The slab or block shall extend at least two (2) feet from the well in all directions, have a minimum thickness of four (4) inches, and should be separated from the well casing by a plastic or mastic coating or sleeve to prevent bonding of the slab to the casing.

**2.** The surface of the slab shall be sloped to drain away from the well.

**c.**   The top of the casing shall extend a minimum of one (1) foot above the ground surface.

**d.**   If a well is to be completed with polyvinyl chloride (PVC) casing, in lieu of placing A concrete slab around the casing at the ground surface as provided for in section (2) of this rule, a steel sleeve may be used to protect the casing from breakage. The steel sleeve shall be a minimum of three-sixteenths (3/16) inches in thickness and eighteen (18) inches in length, shall extend six (six) inches into cement, and shall be two (2) inches larger in diameter than the polyvinyl chloride (PVC) casing being used.

**e.**   All wells that are to be completed in the artesian or confined portion of an aquifer shall be completed so that waters from other strata or zones are not allowed to commingle through the borehole-casing annulus. Therefore, one of the following shall apply:

**f.**   If the well is to be completed with steel casing, the annular space between the borehole and the casing shall be filled with cement from the top of the water-bearing formation to be produced from to the land surface. If the well is to be completed with polyvinyl chloride (PVC) casing, the Borehole-casing annulus shall be filled with cement, palletized bentonite, mud, or other suitable material if specifically approved by the Board, from the top of the water-bearing formation to be produced from to the land surface, provided that if cement is not used, a cement plug will be installed as required in section (a) of this rule.

**g.**   If a well is to be gravel packed the full length of the casing, it shall be completed with double string of casing. The outside string of casing must be set to the top of the desired aquifer formation so as to seal off all water bearing strata above the formation, and extend one foot above land surface. The annulus between the outside casing and the borehole shall be completed according to subsection (e.1). The second string of casing may then be set at the desired depth in the aquifer, and the annulus between the two casings shall contain gravel.

**h.**   If a gravel packed well is to be drilled in the unconfined portion of an aquifer, it shall be completed with a double string of casing. The outside string of casing shall be set at depth of 20 feet below land surface, extend one foot above land surface, and shall be completed according to subsection (a). The second string of casing may then be set inside of the first string of casing at the desired depth in the aquifer, and the annulus between the two casings shall contain gravel.

**1-23-09**