**CITY OF ANSON, Appellant,**

v.

**Dorothy Davis Jones HARPER, Donna D. Fitzpatrick, Bobby Joe Jones, Annie Marie Jones Spruit, Pauline Jones Morgan, Reese Davis, Mary Evelyn Hanson, James Ann Reneau, Travis W. Davis, Audrey D. Hudson, and Cottonwood Petroleum Company, Appellees.**

**No. 11–05–00398–CV.**

Court of Appeals of Texas, Eastland.

July 13, 2006.

---

C. Patrick Phillips, Todd Michael Hurd, Shotts, Hurd, Ziegler & Trevino, Lubbock, Linda L. Sjogren, Shotts & Sjogren, LLP, Dublin, Chadwick Cowan, County Atty., Anson, for Appellant.

H. Alan Carmichael, Steakley, Wetsel & Carmichael, L.L.P., Sweetwater, for Appellees.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

**OPINION**

RICK STRANGE, Justice.

Appellees (Dorothy Davis Jones Harper, Donna D. Fitzpatrick, Bobby Joe Jones, Annie Marie Jones Spruit, Pauline Jones Morgan, Reese Davis, Mary Evelyn Hanson, James Ann Reneau, Travis W. Davis, Audrey D. Hudson, and Cottonwood Petroleum Company), collectively "plaintiffs," filed suit against the City of Anson, Texas, seeking damages and equitable relief be-

cause of the City's plans to build a municipal solid waste landfill on land where they own the minerals. The City filed a plea to the jurisdiction. The trial court denied that motion, and the City filed an interlocutory appeal. We affirm in part and reverse and render in part.

## I. *Background Facts*

The individual plaintiffs own the mineral estate of a quarter section of land in Jones County, Texas. The mineral estate was severed from the surface estate in a 1942 deed that reserved to grantors:

> [A]ll of the oil and gas or other minerals or the proceeds therefrom which maybe [sic] found or produced from, under and on the above described premises, together with the right of ingress and egress for the purpose of developing and extracting said oil, gas and other minerals and *the right to use such part of the surface of said premises as may be necessary or convenient* in the development and extraction of said minerals (emphasis added).

The tract is unique because of the presence of a copper deposit. Prior to 1940, a twenty-foot petrified copper log was found on the tract and was donated to the Smithsonian Museum. A second log was donated to the Texas College of Mines and Metallurgy.[1] Copper-containing geodes are present on the surface today.

In 2003, the individual plaintiffs executed an Oil, Gas and Mineral Lease with Cottonwood. The lease contained a two-year primary term, with an option for an additional one year. Cottonwood ultimately exercised this option. Shortly after executing the original lease, Cottonwood entered into a surface use agreement with Reid M. Harrell, the surface owner. Har-

rell subsequently executed a warranty deed with vendor's lien, conveying the surface of the quarter section to the City. Harrell's warranty deed was specifically made subject to the 1942 mineral reservation.

The City acquired the tract to construct a municipal solid waste landfill. The City filed for a permit with the Texas Commission on Environmental Quality (TCEQ) and began clearing the entrance and constructing a road. A complaint was filed with the TCEQ, and the City stopped its construction activities and removed its equipment.

Plaintiffs filed suit against the City seeking injunctive relief, a declaratory judgment, damages, and attorney's fees. The City filed a plea to the jurisdiction contending plaintiffs' claims were barred by sovereign immunity or were not yet ripe. The trial court held an evidentiary hearing on the City's plea. Reese Davis, one of the mineral owners, testified that the City's dirt work had damaged their copper deposit. He testified that the City had started to build a road and that, while this road would not prevent the mineral owners from mining the copper, it would make it more expensive. He also testified that the road would not prevent them from drilling an oil well, but that the operation of a landfill would. The trial court denied the City's plea, and the City filed an interlocutory appeal to this court pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2005).

## II. *Issues*

The City challenges the trial court's order denying the plea to the jurisdiction in three issues. The City contends that

---

1. The Texas College of Mines and Metallurgy eventually became Texas Western College and then the University of Texas at El Paso.

plaintiffs failed to state a claim for inverse condemnation because they did not show that the City acted with the intention to exercise eminent domain power; that plaintiffs have not alleged a presently justiciable controversy; and that plaintiffs' claims under the Private Real Property Rights Preservation Act,[2] for injunctive relief, and for attorney's fees are barred by sovereign immunity.

## III. *Standard of Review*

 A party who sues a political subdivision of the state, such as a municipality, must establish that the legislature has consented to the suit. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001(3)(A) & (B), 101.025 (Vernon 2005); *Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Without this consent, governmental immunity deprives the trial court of subject-matter jurisdiction. *Id.* Whether a trial court has subject-matter jurisdiction is a question of law subject to a de novo review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). Consequently, we review a trial court's order denying a jurisdictional plea based on governmental immunity de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002).

## IV. *Discussion*

Plaintiffs' petition asks for a declaratory judgment and an injunction, asserts an inverse condemnation claim and a cause of action under the Preservation of Private Real Property Rights Act, and also requests attorney's fees. Plaintiffs contend that, if the trial court has jurisdiction over any of their claims, it is inappropriate to sustain a plea to the jurisdiction over the remainder.

Subsequent to oral argument, the supreme court decided *Thomas v. Long,* 207 S.W.3d 334 (Tex.2006). That case involved an employment dispute between the Harris County Sheriff's Office and a jailer. The jailer sought a writ of mandamus, a temporary restraining order, and damages. The sheriff contended that the trial court lacked jurisdiction because the jailer had not exhausted her administrative remedies. The jailer made a similar argument to the one advanced by plaintiffs in this case and contended that, because the sheriff's office had conceded that the trial court had jurisdiction over at least one of her claims, the trial court was required to deny the entire plea to the jurisdiction. The supreme court disagreed and held that "it is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction." *Id.* at 338. We will, therefore, address the trial court's jurisdiction over each of plaintiffs' causes of action.

 Plaintiffs bear the burden of establishing jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). When deciding a plea to the jurisdiction, the plaintiff's allegations must be accepted as true, *City of El Campo v. Rubio,* 980 S.W.2d 943, 945 (Tex. App.-Corpus Christi 1998, pet. dism'd w.o.j.), and must be construed liberally in favor of the plaintiff. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). The trial court may also consider evidence when necessary to resolve any jurisdictional issue. *Id.* at 223.

### A. *Are Plaintiffs' Claims Ripe?*

 The City contends that plaintiffs' claim for inverse condemnation was not yet ripe because there was not a presently justiciable controversy. The City relies

---

2. Tex. Gov't Code Ann. § 2007.001 (Vernon 2000).

primarily upon the fact that its landfill permit application was still pending before the TCEQ. Plaintiffs respond that their claims are ripe because the City's dirt work has caused actual damage to their copper deposit.

■ Ripeness is an element of subject-matter jurisdiction. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994). Its genesis is the separation of powers provision in Article II, section 1 of the Texas Constitution. *Mayhew*, 964 S.W.2d at 928. This provision prohibits courts from issuing advisory opinions because that function is reserved to the executive branch. *Id.*

■ Texas courts have traditionally relied upon federal decisions when determining ripeness questions because of their experience in this area of the law. *Id.* The Fifth Circuit has written that a case is "generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir.2003); *see also Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (a claim is not ripe for adjudication if it rests upon contingent future events that may or may not occur as anticipated).

The Fifth Circuit has twice found that a controversy over a proposed landfill was not ripe because regulatory approval of the landfill was still pending. In *Smith v. City of Brenham, Tex.*, 865 F.2d 662 (5th Cir. 1989), and *Monk*, 340 F.3d 279, neighboring landowners filed suit to enjoin further development of proposed landfills. In both cases, permit applications were pending before state agencies. Because the permit applications were still pending, the construction and operation of a landfill was merely a possibility; consequently, plaintiffs had not yet suffered actual damage. The Fifth Circuit found that the disputes

were not ripe and that the trial courts had no jurisdiction. *Monk*, 340 F.3d at 283; *Brenham*, 865 F.2d at 663–64; *see also Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 821–22 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.) (the anticipated results of a proposed project do not constitute a present taking).

■ A similar situation exists in this case. The City has filed a permit application with the TCEQ. This application may or may not be granted. Unless and until the City receives a permit, it cannot construct or operate a landfill. Plaintiffs acknowledged during oral argument that there are contingencies because of the permit-application process but suggested it would be appropriate to allow discovery to continue while the TCEQ considers the City's application. Subject-matter jurisdiction is a multiple choice question with only two answers: yes or no. If the trial court does not have jurisdiction to enter a judgment, it does not have jurisdiction to allow plaintiffs to conduct discovery.

This case is, however, distinguishable from *Monk* and *Brenham* because actual construction had taken place on the property. The City had done some preliminary roadwork and had cleared the property's entrance. Davis testified that this work had destroyed some of their geodes. The trial court entered findings of fact and conclusions of law following the jurisdictional hearing. Those findings are unchallenged by the City. The trial court found that the City's dirt work had damaged a portion of the copper deposit and had restricted plaintiffs' right to use the surface. What might happen if the City's permit application is approved does not present a ripe controversy, and the trial court does not have jurisdiction to hear a claim based upon future events. But, the trial court does have potential jurisdiction—subject to

the City's governmental immunity defense—to resolve any claim based strictly upon events which have already taken place. The City's second issue is sustained in part and overruled in part.

### B. Have Plaintiffs Stated a Claim for Inverse Condemnation?

The City contends that plaintiffs have failed to state a claim for inverse condemnation because they have not shown that it acted with the intention of exercising its eminent domain power as contrasted with its rights as a surface owner. Plaintiffs argue that they have pled sufficient facts to state an inverse condemnation claim because they allege that the City purchased the surface of their tract, undertook actions which precluded or impaired their access to the tract's minerals, and destroyed some of their geodes.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. To establish a takings claim, plaintiffs must prove that (1) the City intentionally performed certain acts (2) that resulted in a taking of property (3) for public use. Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc., 39 S.W.3d 591, 598 (Tex.2001). A taking for inverse condemnation purposes can occur in three situations: (1) a total temporary restriction of access; (2) a partial but permanent restriction of access; or (3) a temporary limited restriction of access caused by an illegal activity, a negligent performance of a project, or an unduly delayed project. City of Austin v. Ave. Corp., 704 S.W.2d 11 (Tex. 1986). The determination of whether a taking has occurred is a question of law. City of Austin v. Travis County Landfill Co., 73 S.W.3d 234, 241 (Tex.2002).

Much of the recent inverse condemnation litigation concerns when regulations constitute a taking. See, e.g., Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (moratoria on development in the Lake Tahoe Basin). Physical takings do not present the same challenge to define because they are more amenable to per se rules. For example, the Texas Supreme Court has held that "physical possession" is categorically a taking for purposes of the Texas Constitution. Sheffield Dev. Co. v. City of Glenn Heights, 140 S.W.3d 660, 669–70 (Tex. 2004); see also United States v. Pewee Coal Co., 341 U.S. 114, 115, 71 S.Ct. 670, 95 L.Ed. 809 (1951) (when the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner).

The Texas Constitution prohibits three distinct types of "takings" without adequate compensation: (1) taking, (2) damaging, and (3) destroying property. City of Dallas v. Jennings, 142 S.W.3d 310, 313 n. 2 (Tex.2004). Plaintiffs do not allege that the City is attempting to mine their copper or produce their oil and gas. Rather, plaintiffs allege the City destroyed geodes on the surface and impaired their rights to use the surface as may be necessary or convenient to develop the minerals. These allegations implicate the second and third categories of takings.

The City argues that plaintiffs must present evidence that it intentionally damaged their property for a public purpose, relying upon Tarrant Reg'l Water Dist. v. Gragg, 151 S.W.3d 546 (Tex.2004). It also relies upon Jennings, 142 S.W.3d at 313–15, for the proposition that plaintiffs must show some objective indicia of intent to distinguish a takings claim that is compensable from a negligence claim that is

not. *Gragg* involved a sufficiency of the evidence review following a jury trial, and *Jennings* involved a summary judgment granted in favor of the City of Dallas. The court's discussion of the elements of a takings claim is controlling on our decision, but its discussion of the quantum of evidence necessary to establish a claim is not. In this case, we are concerned with the sufficiency of plaintiffs' pleadings and not the ultimate merits of their claim. The trial court may consider evidence on jurisdictional questions, but plaintiffs were not required to produce sufficient evidence to establish a complete cause of action.

The Texas Supreme Court has, in recent years, considered several takings cases that provide guidance on the allegations necessary to state an inverse condemnation claim. In *Gragg,* 151 S.W.3d 546, a regional water control and improvement district flooded a ranch by opening a reservoir's floodgates. In *Jennings,* 142 S.W.3d 310, the City of Dallas flooded a home while clearing a clogged sewer main. In *Little–Tex,* 39 S.W.3d 591, Texas A & M and the General Services Commission disputed two contractors' entitlement to additional compensation for work performed under contract.

The court's analysis provides guidance when attempting to distinguish between claims that give rise to a potential taking from those that do not. First, when the State acts as a party to a contract and exercises the same rights as would a private party, it is not acting as a sovereign, and a takings claim does not lie. *Id.* at 599. Second, the State is not strictly liable under the takings clause for all intentional actions. The State cannot have greater liability than would a private citizen engaging in the same conduct. *Jennings,* 142 S.W.3d at 313. Third, there must be some public benefit associated with the government's action. *Gragg,* 151

S.W.3d at 554. If the damage is merely the accidental result of the government's act or is caused by negligence, there is no taking. *Id.* at 555; *Jennings,* 142 S.W.3d at 313. However, it is unnecessary to show that the State intended to cause damage. If the State knows that a specific act is causing identifiable harm or that the specific property damage is substantially certain to result from an authorized governmental action, a takings claim may lie even if there was no desire to damage the property. *Jennings,* 142 S.W.3d at 314.

The City's reference to its actions as a surface owner are presumably an attempt to take advantage of the *Little–Tex* decision. This case is distinguishable. First, there is no contract between the City and plaintiffs. Second, the City is not being held to greater liability than a private citizen. The mineral owner is the dominant estate. *Ball v. Dillard,* 602 S.W.2d 521, 523 (Tex.1980). Plaintiffs' mineral reservation contains unique language giving them greater rights than are normally possessed by mineral owners. Plaintiffs would have a potential cause of action against any surface owner who damaged their copper deposit or otherwise prevented them from accessing their minerals. *See, e.g., id.* (affirming damages awarded to mineral lessee caused by surface owner's denial of access); *Davis v. Devon Energy Prod. Co.,* 136 S.W.3d 419, 425–26 (Tex.App.-Amarillo 2004, no pet.) (affirming injunction against surface owners because of their interference with Devon's right to use the surface for oil and gas operations). Third, the operation of a municipal landfill is a governmental function. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(6) (Vernon 2005). Thus, the City's actions in connection with the landfill are done as a sovereign and not as a private landowner.

These factors also distinguish this case from *Gragg* and *Jennings*. Plaintiffs do not allege any act of negligence. Their pleadings and extrinsic evidence show that the City acquired this tract to construct a landfill and that it began surface preparations for that purpose. The City's chain of title establishes that it was on actual notice of plaintiffs' ownership interest. There is no indication that the City had any desire or intention to harm plaintiffs; but, unlike *Jennings*, this is not an attenuated claim based upon unhappy circumstance. Plaintiffs' claim is the direct result of the City's dirt work.

It is unnecessary, as the City suggests, that plaintiffs establish that the City knew geodes were present on the surface or that its surface activities would damage plaintiffs' copper deposit. Nor must plaintiffs show that a direct benefit flowed to the public from the damage done to plaintiffs' copper deposit.

In *Gragg*, the public did not benefit from the fact that the plaintiff's ranch was flooded nor did the plaintiff show that the district knew in advance what damage would be done to the ranch when the floodgates were opened. The public benefitted because the reservoir's level was reduced before it overflowed the dam. The ranch was damaged as a direct result of that action.

The same holds true here. The public benefitted from the City's dirt work because it was done to help construct a public landfill. That work was done intentionally to alter the surface, which because of the copper deposit and plaintiffs' rights under the mineral reservation, arguably caused damage. *Cf. Jennings*, 142 S.W.3d at 314 (governmental entities may be liable if they know that a specific act is causing

identifiable harm or that the specific property damage is substantially certain to result from an authorized governmental action).

Plaintiffs' allegations and extrinsic evidence, when taken as true [3] and construed liberally in their favor,[4] are sufficient to establish a potential takings claim. The City's preparatory dirt work and the plaintiffs' enjoyment of their mineral estate are potentially conflicting. To the extent the City's *actual* development of the property as a landfill interferes with plaintiffs' property rights, a takings claim is alleged. Actual actions would not include the City's planning process or permit application activities. Instead, any takings claim is necessarily limited to actions physically taken on the property that presently deprive plaintiffs of their ownership interests. The City's first issue is overruled to the extent plaintiffs allege a takings claim based upon actions previously taken on the property. The City's first issue is sustained to the extent plaintiffs allege a takings claim based upon the City's future plans.

C. *Are Plaintiffs' Claims Barred By Governmental Immunity?*

■■■■ The City contends in its third issue that plaintiffs' non-takings claims are barred by sovereign immunity. Sovereign immunity refers to the State's immunity from suit and liability. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). This immunity extends to divisions of state government, such as boards, hospitals, and universities. *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). Political subdivisions including cities, counties, and school districts are protected by governmental immunity. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995).

3. *See Rubio*, 980 S.W.2d at 945.

4. *See Miranda*, 133 S.W.3d at 226.

Sovereign immunity and governmental immunity are frequently used interchangeably, but they represent distinct concepts. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex. 2003).[5]

There is no dispute that the City's intended use of the land for a municipal solid waste landfill is a governmental function. Consequently, plaintiffs must establish a clear and unambiguous waiver of governmental immunity for each claim asserted by them. *Fed. Sign,* 951 S.W.2d at 405. Plaintiffs' petition contains, in addition to an inverse condemnation claim, a request for a declaratory judgment, a claim under the Private Real Property Rights Preservation Act, a request for injunctive relief, and a request for attorney's fees. In light of *Thomas,* 207 S.W.3d 334 these claims will be reviewed separately.

1. *Declaratory Judgment Action and Request for Attorney's Fees*

Plaintiffs claim that the legislature waived immunity for declaratory judgment actions including claims for attorney's fees in the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM.CODE ANN. § 37.001 (Vernon 1997), because the statute defines "person" to include municipal corporations. Plaintiffs' live pleading asked for a declaratory judgment to:

● declare and interpret their rights and the City's rights under the deed severing the mineral estate;

● declare that the operation of a landfill will prevent them from economically mining their copper deposit; and

● declare that the establishment of a landfill will constitute a taking.

The Declaratory Judgments Act authorizes a person interested in a deed to have determined any question of construction and obtain a declaration of their rights, status, or other legal relations. TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997).

■■■ Governmental immunity does not bar all declaratory judgment actions against municipalities. *See, e.g., Labrado v. County of El Paso,* 132 S.W.3d 581, 593 (Tex.App.-El Paso 2004, no pet.) (allowing declaratory judgment action against El Paso County to interpret a statute). But, a declaratory judgment action may not be used as a means to circumvent governmental immunity and obtain a monetary judgment. *See, e.g., Bell v. City of Grand Prairie, Tex.,* 160 S.W.3d 691, 693 (Tex. App.-Dallas 2005, no pet.) (trial court did not have jurisdiction to consider a declaratory judgment action to establish that firefighters had been underpaid).

■■■ Declaratory judgment actions are also subject to a ripeness review. *See Firemen's Ins. Co. of Newark, N.J. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968) (Declaratory Judgments Act does not empower courts to issue advisory opinions). Sister courts have held that a declaratory judgment action is premature if governmental proceedings which will impact the parties' respective rights remain pending. In *Save Our Springs Alliance v. City of Austin,* 149 S.W.3d 674 (Tex.App.-Austin 2004, no pet), the court held that there was no jurisdiction to grant a declaratory judg-

---

**5.** The principal distinction between the two is that sovereign immunity bars a political subdivision's claims against a state agency and that governmental immunity does not bar a state agency's claims against a political subdivision. *Compare Tex. Dep't Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 641–44 (Tex. 2004), *with Tex. Workers' Comp. Comm'n v. City of Eagle Pass/Tex. Mun. League Workers' Comp. Joint Ins. Fund,* 14 S.W.3d 801, 803–04 (Tex.App.-Austin 2000, pet. denied). Anson is a home-rule city. That does not change the analysis. The City of Eagle Pass is also a home-rule city. *See id.*

ment that a development agreement was invalid because no permit had yet been issued. In *Texas A & M Univ. v. Hole,* 194 S.W.3d 591 (Tex.App.-Waco 2006, no pet. h.), the court held that a declaratory judgment action concerning student disciplinary proceedings was not ripe because the students had not yet completed the disciplinary process. *See also Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993) (the Declaratory Judgments Act does not enlarge the court's jurisdiction but merely provides a procedural device for deciding cases already within that jurisdiction).

We have previously held that plaintiffs' takings claim was not ripe to the extent that it relied upon the construction of a landfill because the City had not yet received a TCEQ permit. For that same reason, plaintiffs' declaratory judgment action is not ripe to the extent it seeks an adjudication of the parties' rights if a permit is granted and if the City proceeds with its landfill plans.

 The trial court lacks jurisdiction to consider the remainder of plaintiffs' declaratory judgment action because it merely restates their takings claim. We are obligated to look at the real nature of the relief sought. When the suit primarily seeks monetary damages, a claimant cannot add a declaratory judgment claim to escape governmental immunity. *IT–Davy,* 74 S.W.3d at 855–56 (parties cannot cast a breach-of-contract action as a declaratory judgment action to escape sovereign immunity).

Plaintiffs do not seek the construction of a statute or ordinance. They do make a general reference to their title and ask for a construction of the parties' respective rights under a deed in their chain of title. But, they do not contend that a dispute exists over the construction of that deed beyond their claim that the City's actions constitute a taking for which they are entitled to compensation. Consequently, the trial court does not have jurisdiction to consider plaintiffs' declaratory judgment action, and the City's third issue is sustained to the extent it challenges this cause of action.

2. *Private Real Property Rights Preservation Act*

Plaintiffs allege that the Private Real Property Rights Preservation Act affords them a cause of action:

> [T]o determine whether the governmental action of the CITY OF ANSON, TEXAS results in a taking under the Act. Plaintiffs will show that the construction of the landfill on the above described property will constitute a taking of their minerals by precluding or severely restricting their right to enter the land and drill, mine and extract their minerals as is their constitutional and contractual right.

The City argues the Act is inapplicable because it is limited to actions that have effect in a municipality's extraterritorial jurisdiction (ETJ) and that this tract lies outside the City's ETJ. There is no dispute that the Act does not apply to land outside a city's ETJ, but the City points us to no evidence in the record establishing the tract's location. We do note that plaintiffs have not challenged the City's statement that the tract is outside the City's ETJ. Thus, there may no longer be any dispute between the parties about the viability of this claim, but we cannot sustain the City's third issue with the record before us. Because we have found previously the trial court has jurisdiction over some of the plaintiffs' claims, the parties and trial court will have the opportunity to consider this issue further. The City's third issue is overruled to the extent it challenges

**396**

plaintiffs' cause of action under the Private Real Property Rights Preservation Act.

### 3. *Injunctive Relief*

██ Plaintiffs requested an injunction against the City preventing it from "planning, constructing, operating or establishing a landfill" on their tract of land. The City argues that any claim plaintiffs might have is for inverse condemnation and that the relief afforded them for that claim is monetary damages. The City argues that there is no further waiver for injunctive relief.

██ Whether the trial court has jurisdiction to grant a request for injunctive relief depends upon the nature of the request. A suit brought to control a governmental entity's actions or to subject it to liability is not maintainable without legislative consent or statutory authorization. *Dir. of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265 (Tex.1980). But, suits against governmental officials who have acted unlawfully or suits to prevent the occurrence of an unlawful action do not require legislative or statutory authorization. *Id.*

Plaintiffs' request for injunctive relief falls firmly within the first category because they specifically seek an injunction prohibiting the City from constructing and operating a landfill. Plaintiffs cite no authority waiving governmental immunity in this instance. We sustain the City's third issue to the extent the trial court found it had jurisdiction to consider plaintiffs' request for injunctive relief.

### *Conclusion*

The trial court's November 16, 2005 order on the City's plea to the jurisdiction is affirmed in part and reversed and rendered in part. The trial court has jurisdiction over plaintiffs' inverse condemnation claim to the extent this claim is based upon actions that have caused actual interference with plaintiffs' property rights and over plaintiffs' Private Real Property Rights Preservation Act claim. That portion of the trial court's order is affirmed. The trial court does not have jurisdiction over plaintiffs' inverse condemnation claim to the extent this claim is based upon future actions or actions which have not yet caused actual interference. The trial court also does not have jurisdiction over plaintiffs' declaratory judgment action or request for attorney's fees. That portion of the trial court's order is reversed, and judgment is rendered for the City.