# NO. 12-22-00279-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *MCBRIDE OPERATING, LLC,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

McBride Operating, LLC filed this original proceeding to challenge Respondent's denial of its Rule 91a motion to dismiss.[1] We conditionally grant the writ.

## BACKGROUND

In September 2021, Real Parties in Interest Terry Allen, Jan Allen, and Cypress Creek Farms, LLC (collectively RPIs) sued McBride, Ronald Samford, Sammy Samford, and Vicky Rankin, alleging that the Samfords and Rankin sold property to McBride when they had promised to sell the property to the RPIs.[2] They further alleged that McBride filed an application to operate a commercial waste disposal facility and associated pits with the Texas Railroad Commission (the Commission or RRC), which administratively denied the application. They asserted causes of action for breach of contract, fraud, promissory estoppel, and partial/specific performance against Rankin and the Samfords, and sought a temporary restraining order, temporary injunction, and permanent injunction against McBride. On October 8, 2021, Respondent signed a temporary injunction, which enjoined McBride from:

> A. Performing any operations in furtherance of the requested permit filed with the Railroad Commission of Texas by the McBride Defendant and enjoining the McBride Defendant, along

---

[1] Respondent is the Honorable James A. Payne, Jr., Judge of the 273rd District Court in Shelby County, Texas.

[2] The Samfords and Rankin are not parties to this original proceeding.

with any of their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise on the property identified as the 92.9085 acre tract of land sold from the Samford Defendants to the McBride Defendant including any operations that would be allowed if the permit filed with the Texas Railroad Commission is issued.

B. Actively changing the original contours of the land on the property identified as the 92.9085 acre tract of land in order to prepare the location for any planned oil and gas disposal activities until further order of the Court.

C. From removing any top soil from the original contours of the land on the property identified as the 92.9085 acre tract of land in order to prepare the location for any planned oil and gas disposal activities until further order of the Court.

D. From transferring, selling or converting the property identified as the 92.9085 acre tract to any third party by the McBride Defendant.

On June 17, 2022, the RPIs filed a first amended petition, in which they sought a temporary and permanent injunction and asserted a violation of the Texas Natural Resources Code against McBride. The amended petition no longer alleged causes of action against the Samfords or Rankin. McBride filed its Rule 91a motion to dismiss and to dissolve the temporary injunction on July 19. After a hearing, Respondent denied the motion on August 18. Respondent's order does not identify the reason or reasons for denying the motion. McBride filed this original proceeding on October 19.[3]

On November 28, Respondent signed an amended temporary injunction, which is virtually identical to the original.[4] The amended injunction omits "D" from the list of items from which McBride is enjoined and extends the injunction's effective date until the matter is heard at trial set for June 12, 2023.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator

---

[3] McBride also has an appeal pending before this Court in cause number 12-22-00248-CV, which challenges the August 18 denial of its Rule 91a motion to dismiss and motion to dissolve the temporary injunction.

[4] *See* **McDowell v. McDowell**, No. 02-16-00038-CV, 2016 WL 4141029, at *1 (Tex. App.—Fort Worth Aug. 4, 2016, no pet.) (mem. op.) ("An amended or modified temporary injunction supersedes and implicitly vacates a prior temporary injunction.").

has the burden of establishing both prerequisites. ***In re Fitzgerald***, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.). "Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss." ***In re Farmers Tex. Cty. Mut. Ins. Co.***, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding).

<u>ABUSE OF DISCRETION</u>

McBride contends that Respondent abused his discretion when denying its Rule 91a motion to dismiss because (1) Respondent lacks subject matter jurisdiction, as the only alleged claim is not ripe as a matter of law and there is no legal injury; (2) the natural resources code claim fails because McBride violated no statutes or rules; and (3) dismissal of the RPIs' only claim also necessitates dismissal of the injunctive relief claims.

**Applicable Law**

With certain exceptions inapplicable to this case, a "party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." ***Id***. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." ***Id***. A Rule 91a motion must be based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59.[5] TEX. R. CIV. P. 91a.6.

"We review the merits of a Rule 91a ruling de novo; whether a defendant is entitled to dismissal under the facts alleged is a legal question." ***Farmers***, 621 S.W.3d at 266. "We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact." ***Malik v. Geico Advantage Ins. Co., Inc.***, No. 01-19-00489-CV, 2021 WL 1414275, at *4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, pet. denied) (mem. op.). We apply the fair-notice pleading standard to determine whether a petition's allegations are sufficient to allege a

---

[5] *See* TEX. R. CIV. P. 59 ("Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and shall be deemed a part thereof for all purposes. Such pleadings shall not be deemed defective because of the lack of any allegations which can be supplied from said exhibit. No other instrument of writing shall be made an exhibit in the pleading.)."

3

cause of action. ***Koenig v. Blaylock***, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, pet. denied).

## Compliance with Rule 91a.3(a)

The RPIs contend that McBride filed an untimely motion to dismiss. Under Rule 91a, a motion to dismiss must be "filed within 60 days after the first pleading containing the challenged cause of action is served on the movant[.]" TEX. R. CIV. P. 91a.3(a). "[A]lthough the procedural deadlines in Rule 91a.3 are phrased in terms of 'must,' these provisions are directory and not mandatory." ***Malik***, 2021 WL 1414275, at \*4; *see **Walker v. Owens***, 492 S.W.3d 787, 790–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also **Koenig***, 497 S.W.3d at 599. Thus, "any noncompliance with the timing of the motion will not result in reversal if such error is harmless." ***Malik***, 2021 WL 1414275, at \*4.

McBride's motion was not untimely. The RPIs filed their original petition on September 2, 2021, alleging breach of contract, fraud, promissory estoppel, and partial/specific performance against Rankin and the Samfords and seeking injunctive relief against McBride. They filed their amended petition on June 17, 2022, in which McBride was the only defendant. The amended petition again sought injunctive relief but added a new claim under the Natural Resources Code, including a request for injunctive relief and damages under the Code. *See* TEX. NAT. RES. CODE ANN. § 85.321 (West 2011) (suit for damages); *see also **Exxon Corp. v. Emerald Oil & Gas Co., L.C.***, 331 S.W.3d 419, 422 (Tex. 2010) (Section 85.321 creates a private cause of action for statutory violations). Thus, the amended petition was the first pleading containing this statutory cause of action. The certificate of service reflects that all counsel of record were served on June 17.

McBride filed its motion to dismiss on July 19, within sixty days after the amended petition was served on McBride's counsel. *See* TEX. R. CIV. P. 91a.3(a). The motion expressly references the amended petition, stating in pertinent part that "…Plaintiffs filed their First Amended Original Petition, wherein Plaintiffs dismissed all of the claims, causes of actions against the SAMFORDS, withdrawing their allegation of an oral contract and right to the property in question. Plaintiffs remaining 'causes of action' are for a temporary and permanent injunction for some future event that may or may not happen." Even the RPIs' response to the motion acknowledges that McBride challenged the causes of action asserted in the amended

4

petition, stating "Defendant chose the wrong procedural vehicle to challenge the allegations in Plaintiff's Amended Petition."

We do note that McBride's motion does not specifically mention the natural resources code. The RPIs identified this omission in their response to McBride's motion and at the hearing, but the parties addressed the substance of the issue at the hearing.[6] "A motion to dismiss must state that it is made pursuant to this rule, *must identify each cause of action to which it is addressed*, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." TEX. R. CIV. P. 91a.2 (emphasis added). Magic words are not required; "[a]t issue is whether the grounds for dismissal are clear from the motion." ***Cooper v. Trent***, 551 S.W.3d 325, 331 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). In ***Cooper***, a fair reading of the motion to dismiss established that movant challenged all of the plaintiff's causes of action, as the motion stated, "Pursuant to Texas Rule of Civil Procedure 91a, Michael Trent moves to dismiss all of Cooper's claims against him[.]" ***Id***. at 331. The movant was "not required to list separately each cause of action in the Rule 91a motion because he challenged their collective viability[.]" ***Id***. Although McBride's motion does not expressly mention the natural resources code, the motion did seek dismissal of the entire case and challenged the RPIs' "remaining 'causes of action.'" Thus, the motion challenges the collective viability of the RPIs' claims for injunctive relief and damages under the natural resources code and was timely filed.

**Ripeness**

We first address McBride's contention that the lawsuit must be dismissed for want of subject matter jurisdiction because the RPIs' only claim is not ripe as a matter of law and the RPIs suffered no legal injury. According to McBride, the RPIs' claim depends on the resolution of hypothetical facts and events that have yet to occur. Specifically, McBride identifies the following "hypothetical" events that may or may not come to fruition: (1) the "Commission may or may not issue the permit that would allow McBride to commence construction on the facility;" and (2) McBride has not commenced constructing the facility, or begun operating it. McBride further asserts that the RPIs have suffered no legal injury, in that McBride "has done nothing to injure [the RPIs'] land; it does not even have regulatory approval that would allow it to begin construction." McBride maintains that a claim is not ripe if based on assumptions about actions that a governmental entity, such as the Commission, may or may not take. They further

---

[6] The RPIs do not raise a complaint under Rule 91a.2 in their response to the petition for writ of mandamus.

assert that the RPIs essentially invite a prediction regarding what a permit may look like and speculation that McBride will violate that permit or other environmental regulations if allowed to construct and operate the facility. McBride maintains that, at this juncture, it cannot be determined whether the Commission will issue a permit, what activity the permit will authorize, and whether the permit will be upheld or modified.

### *The RPIs' Amended Petition*

In the factual background section of their amended petition, the RPIs stated that they own several acres of land and McBride is the adjoining landowner. According to the RPIs, McBride filed with the Commission an application for a permit to operate a commercial waste disposal facility and associated pits on McBride's land. The RPIs maintained that they use their land for a commercial cattle operation and have water wells and ponds on their land, all of which would be negatively impacted by a dumpsite. The RPIs alleged that (1) "Defendant's desire to use the McBride tract for an environmental dumpsite is reckless and dangerous to Plaintiffs and the surrounding community, and court protection is required to prevent irreparable harm to land, cattle and fresh water sources;" and (2) "Defendant by filing this permit expresses an intent to use its land in such a way that will cause environmental harm to Plaintiffs' land as well as to other surrounding landowners, including harm to the fresh water strata used by numerous people in the community." The petition states, "Because the likelihood of long term harm to Plaintiffs' land is irreparable, Plaintiffs seek the court's protection in preventing this environmental damage prior to the actual damage occurring." According to the petition, the RPIs will be substantially and irreparably harmed due to McBride's requested use of its land, particularly given the request to dispose of oil and gas waste. The petition alleges:

> The contents of the materials being disposed will cause significant damage to the groundwater, private water wells, and local water supply company that furnishes the water supply for the community of Paxton. McBride has a long history of RRC violations and unless prevented by the court, Defendant will create environmental damage to the McBride tract and Plaintiff's tract.

The RPIs' petition acknowledges that the Commission denied McBride's permit on December 20, 2019, but that McBride appealed and the Commission has yet to rule on the appeal.

In the cause of action section of their petition, the RPIs allege the following pertinent to their request for a temporary and permanent injunction:

6

This application for Temporary and Permanent Injunction against McBride Operating LLC seeks to prevent any damage to the McBride tract, and also the surrounding lands that will be harmed, including the Plaintiffs' tract. If Defendant is allowed to operate this dumpsite, Plaintiffs anticipate a substantial amount of dust, debris, and other contaminates blowing onto their lands, crops and grasses which are used in livestock production and cattle operation for meat.

…

Plaintiffs seek to enjoin McBride from starting construction of the facility, defined in McBride's permit filed on November 7, 2019 and any such amendments to said permit filed with RRC. If the permit is granted by the RRC, the commencement of construction and operations of the facility by McBride will result in irreparable injury and harm.

They sought to enjoin McBride from:

Performing any operations in furtherance of the requested permit filed with the RRC by McBride, and enjoining McBride along with any of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, on the property identified as the 92.9085 acre McBride tract, including but not limited to construction and operation of an environmental dumpsite and including any operations that would be allowed if the permit filed with the RRC is issued.

Actively changing the original contours of the land on the McBride tract in order to prepare the location for any planned oil and gas disposal activities until further order of the Court.

Removing any top soil from the original contours of the land on the McBride tract in order to prepare the location for any planned environmental dumpsite and/or oil and gas disposal activities until further order of the Court.

Transferring, selling or converting the property identified as the 92.9085 acre McBride tract to any third party.

The RPIs further assert a violation of the Natural Resources Code. This portion of their petition states, in pertinent part, as follows:

Plaintiffs seek equitable and statutory relief regarding anticipated violations by Defendant of the Tex. Natural Resources Code § 85.001 (Vernon Supp 2019), et seq., and Texas Statewide Rule 8, i. e. 16 Tex. Admin. Code § 3.8 (2018).

. . .

Clearly Defendants' planned operation of an environmental dumpsite falls within the statutorily prohibited activities which will cause pollution on Plaintiffs' land. Plaintiffs, pursuant to §85.321 of the Texas Natural Resources Code, seeks the court's protection from Defendant's planned unlawful activities and asks the court to issue a temporary and permanent injunction from the following acts, omissions and events on the McBride tract:

1) creating and operating an environmental dumpsite on the McBride tract as described in McBride's Application to the RRC;

2) Bringing oil and gas and hydrocarbon waste into the McBride tract;

3) Storing oil and gas waste on the McBride tract;

4) Violating Statewide Rule 8 by causing "pollution" as defined in Statewide Rule 8(a)(28);

7

5) Violating Texas Natural Resources Code §85.046(a) by permitting surface and subsurface waste as defined therein.

…

In addition to seeking an injunction, Plaintiffs seek recovery of damages that will occur should Defendant be allowed to create and operate an environmental dumpsite on land adjacent to Plaintiffs' cattle operations. Pursuant to §85.321 of the Texas Natural Resources Code, property owners are able to seek recovery of damages for violations of the Texas Natural Resources Code. As such, Plaintiffs seek recovery of any and all damages caused by Defendants' proposed operations in creating and operating an environmental dumpsite.

Plaintiffs' damages are the difference between the value of Plaintiffs' land and cattle operations prior to Defendant's activities in operating an environmental dumpsite and the value of Plaintiffs' land and cattle operations subsequent to Defendant's activities. Plaintiffs seek any and all recoverable damages caused to their property by Defendant's activities on the McBride tract.

The RPIs attached exhibits to their petition, including deeds, the administrative denial of McBride's permit, Terry Allen's affidavit, and photographs. The Commission's denial contains various statements in support of its decision, including that the (1) "location of the proposed facility is in an area unsuitable for the processing and permanent interment of oil and gas waste," (2) facility's design and layout is not "protective of surface water features or groundwater in the area," (3) "surface relief includes slopes in excess of 5%, which may contribute to potential pollution of surface or subsurface waters through the off-site migration of waste into sensitive areas in the event of a waste containment failure," (4) "proposed liner systems are not protective of groundwater due to the presence of shallow groundwater and the permeability characteristics of the subsurface soils," and (5) "facility does not provide for mechanical, chemical or thermal separation of the incoming wastes, and there are waste streams that cannot be stored or processed on-site by the design submitted in the application." The denial further states:

Evaluating factors such as the topographical relief, the regional drainage patterns, the proximity to water features and wetlands, the shallow groundwater, and the soil composition, indicates the proposed facility location is not a viable option for the processing and permanent interment of oil and gas waste. Technical Permitting has determined that permit issuance may cause or allow pollution to surface or subsurface waters of the state.

The denial allowed for McBride to pursue a hearing but set forth a detailed list of items to administratively complete the application. Those items include amending or submitting facility designs, various diagrams, plan views, buffer zones, incoming waste streams, soil boring logs, groundwater monitoring plans, design of truck wash bays, et cetera. Terry Allen's lengthy affidavit details his concerns and the impact on his property, bodies of water, and his cattle operation should the facility be approved.

8

*Analysis*

Ripeness, a threshold issue that implicates subject matter jurisdiction, requires a plaintiff to have a concrete injury before bringing a claim. ***Eagle Oil & Gas Co. v. TRO-X, LP***, 619 S.W.3d 699, 706 (Tex. 2021). "Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." ***Id***. (quoting ***Waco Indep. Sch. Dist. v. Gibson***, 22 S.W.3d 849, 851–52 (Tex. 2000)). Thus, ripeness focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or that may never occur. ***Gibson***, 22 S.W.3d at 852. By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine allows courts to avoid premature adjudication, and serves the constitutional interests in prohibiting advisory opinions. ***Id***. A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass. ***Id***.

The RPIs rely on ***Ring Energy v. Trey Resources, Inc.***, 546 S.W3d 199 (Tex. App.—El Paso 2017, no pet.) to support their position that the case is ripe. In that case, Trey obtained permits from the Commission to develop an injection well and before it began its injection program, Ring sued for injunctive relief on grounds that the water injection would cause irreparable waste damage. ***Ring Energy***, 546 S.W3d at 202. The issue before the El Paso Court was "whether a trial court outside of Travis County has the jurisdiction to enjoin a party with a valid permit from developing and using an injection well based on the claim that the injection well will cause imminent and irreparable injury to the complaining party." ***Id***. The Court answered this question in the affirmative. ***Id***. In doing so, the Court characterized the parties' arguments as follows:

> Trey acknowledges that once its injection operations commence, and if it indeed damages Ring, that a claim for damages in the courts might be cognizable under Section 85.321. Trey also acknowledges that some form of equitable relief might also be available before the injection well is put to use, but only in an action filed in Travis County challenging the order authorizing the permit. But it contends that the Andrews County district court lacks subject matter jurisdiction to prohibit the injection operation, and thus effectively invalidate the Commission's permits. Ring counters that the plain language of Section 85.321 grants the courts of this state jurisdiction to hear not only suits for damages, but also claims for equitable relief, which includes claims for injunctive relief.
>
> …

9

> The parties do not argue that Section 85.321 does not include injunctive relief. Their arguments focus on when and where it might be available.

*Id*. at 207-08.  The Court held that:

> …Section 85.321 creates a cause of action for damages and injunctive relief, and Section 85.322 allows such suit against any party who violates a law, rule, or order of the Commission. Section 85.322 contains no venue provision, indicating to us that a Section 85.322 suit is governed by the venue restrictions applicable to any suit. The general venue provisions permit a suit to be filed where all or a substantial part of the events giving rise to the claim occurred, which would often be outside of Travis County.

*Id*. at 211. The Court later concluded that "the Legislature intended to allow pre-injury injunctive relief in the county where the injury is threatened."[7] *Id*. at 215.

Although *Ring* appears to acknowledge that a party can file for pre-injury injunctive relief, a significant difference between *Ring* and the present case is that Trey had already received its permit, while McBride has not. *City of Anson v. Harper*, 216 S.W.3d 384 (Tex. App.—Eastland 2006, no pet.) is instructive.  There, several plaintiffs sued the City of Anson seeking damages and equitable relief because the City planned to build a municipal solid waste landfill on land where the plaintiffs owned minerals. *Harper*, 216 S.W.3d at 387-88.  The City filed a plea to the jurisdiction, which the trial court denied.  *Id*.  On appeal, the City argued that the plaintiffs' claim for inverse condemnation was not yet ripe because their application for a landfill permit was still pending before the Texas Commission on Environmental Quality.  *Id*. at 389-90.  The Eastland Court recognized Fifth Circuit cases in which neighboring landowners sought to enjoin further development of proposed landfills, but because permit applications were still pending before state agencies, the construction and operation of a landfill was a mere possibility and the plaintiffs had not yet suffered actual damages; thus, the controversies over the proposed landfills were not ripe.  *Id*. at 390. (citing *Monk v. Huston,* 340 F.3d 279, 282 (5th Cir. 2003); *Smith v. City of Brenham, Tex.,* 865 F.2d 662 (5th Cir.1989)).  With respect to the City of Anson, the Eastland Court sustained the ripeness issue in part, explaining as follows:

---

[7] Nor do we find the RPIs' other cases instructive.  *See Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 412 (Tex. 1961) (Gregg was drilling or had drilled a well and planned to increase productivity by fracturing the gas producing formation; courts have power to grant injunctive relief to preserve status quo upon allegations and proof that neighbor is about to fracture oil or gas producing horizon beyond property lines for purpose of increasing productivity of neighbor's well); *see also Hastings Oil Co. v. Texas Co.*, 234 S.W.2d 389, 398 (Tex. 1950) (well had not been completed, but probable cause existed to show that it would be completed, thus, petitioners were committing a continuing trespass on the respondents' land; injunctive relief was not beyond trial court's discretion).

...The City has filed a permit application with the TCEQ. This application may or may not be granted. Unless and until the City receives a permit, it cannot construct or operate a landfill.

...

This case is, however, distinguishable from *Monk* and *Brenham* because actual construction had taken place on the property. The City had done some preliminary roadwork and had cleared the property's entrance. Davis testified that this work had destroyed some of their geodes. The trial court entered findings of fact and conclusions of law following the jurisdictional hearing. Those findings are unchallenged by the City. The trial court found that the City's dirt work had damaged a portion of the copper deposit and had restricted plaintiffs' right to use the surface. What might happen if the City's permit application is approved does not present a ripe controversy, and the trial court does not have jurisdiction to hear a claim based upon future events. But, the trial court does have potential jurisdiction—subject to the City's governmental immunity defense—to resolve any claim based strictly upon events which have already taken place.

*Id*. at 390-91. After conducting an immunity analysis, the Eastland Court concluded that the trial court had jurisdiction over the plaintiffs' inverse condemnation claim to the extent the claim was based upon actions that caused actual interference with plaintiffs' property rights and over plaintiffs' Private Real Property Rights Preservation Act claim. *Id*. at 396. But the trial court did not have jurisdiction over the inverse condemnation claim to the extent based upon future actions or actions which had not yet caused actual interference. *Id*.

Here, McBride filed a permit and that permit was denied. McBride pursued an appeal, which remains pending to this Court's knowledge. But it is undisputed that McBride has yet to receive a permit. A fair reading of the RPIs' amended petition demonstrates that they seek injunctive relief and damages to protect their property from harm that may result *if* McBride succeeds in obtaining a permit to operate a commercial waste disposal facility. For instance, their petition refers to McBride's *planned* operation of the dumpsite and damages caused by McBride's *proposed* operations, states that irreparable injury and harm will occur *if* the permit is granted, seeks to prevent environmental damage "prior to the actual damage occurring," seeks recovery of damages *should* McBride be allowed to create and operate the dumpsite, and seeks equitable and statutory relief regarding *anticipated* violations of the Natural Resources Code and Statewide Rule 8.[8] At this juncture, McBride's appeal may or may not be successful and the RPIs may or may not be harmed. As in **Harper**, unless and until McBride receives a permit, it cannot construct or operate the proposed dumpsite. Thus, until a permit is issued, the dispute

---

[8] Statewide Rule 8 addresses water protection. *See* 16 TEX. ADMIN. CODE § 3.8 (2018).

11

remains abstract and hypothetical, rendering it unripe for judicial review. *See Monk*, 340 F.3d at 283.

But the RPIs assert that their claim is not dependent on hypothetical facts or future events because it is not solely based on whether the permit is approved. They explain that McBride has "shown preliminary work on its land can and will proceed," which does not fall within the Commission's jurisdiction and is not covered by the permit; thus, they are not "protected from [McBride's] preparatory activities" while the Commission considers the permit. They argue:

> By conducting preliminary work such as placing pits, dams, paved roads, etc. on Defendant's tract, it will create runoff onto Cypress Creek located on Defendant's land but which also services Plaintiffs' land…. there are enormous risks and dangers that Defendant's massive preparations will negatively impact the freshwater streams which Plaintiffs utilize for their commercial cattle operation.… Such damages to this freshwater stream are irreparable.… An injunction is just the type of remedy used for prevention of this kind of irreparable harm. Because Plaintiffs require protection from Defendant's preparatory activities while Defendant's permit application is being considered, their injury is imminent and not protected by the pending permit.

According to the RPIs, dissolution of the injunction would allow McBride to begin preparatory activities that would irreparably harm the RPIs' land and freshwater supply.

However, our review is limited to the pleading of the cause of action and permissible pleading exhibits. *See* TEX. R. CIV. P. 91a.6; *see also **Zawislak v. Moskow***, No. 03-18-00280-CV, 2019 WL 2202209, at *4 (Tex. App.—Austin May 22, 2019, no pet.) (declining to consider discovery exhibits and other documents in Rule 91a review but looking to live pleading and pleading exhibits). Even construing the RPIs' amended petition and exhibits in their favor, they do not allege preparatory activity as a basis for their claims. Rather, the RPIs' claims are clearly based on the harm they will suffer should the permit be issued, and McBride constructs and operates the dumpsite facility. From the amended petition, one could not even reasonably conclude that an injury is *likely* to occur, given that the challenged activities are contingent on the Commission's grant of a permit, which it has already once administratively denied. *See **Eagle Oil***, 619 S.W.3d at 706.

As pleaded, the RPIs' lawsuit against McBride involves uncertain or contingent future events that may not occur as anticipated or that may never occur. *See **Gibson***, 22 S.W.3d at 852. Accordingly, we conclude that the RPIs' claims are not ripe for judicial review and, consequently, they are not entitled to the relief sought. *See **Harper***, 216 S.W.3d at 390, 396; *see*

12

*also* **Monk**, 340 F.3d at 283; TEX. R. CIV. P. 91a.1 (cause of action has no basis in law if allegations, taken as true, together with inferences reasonably drawn therefrom, do not entitle claimant to relief sought); *see also* **Gibson**, 22 S.W.3d at 851 (ripeness focuses on when an action may be brought and emphasizes the need for a concrete injury to present a justiciable claim). As a result, Respondent lacks jurisdiction over the RPIs' claims based upon future actions or actions which have not yet caused actual interference. Respondent thereby abused his discretion by denying McBride's Rule 91a motion to dismiss and motion to dissolve the temporary injunction. Because we so conclude, we need not address McBride's remaining contentions. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having determined that Respondent abused his discretion by denying McBride's Rule 91a motion to dismiss, we ***conditionally grant*** McBride's petition for writ of mandamus. We direct Respondent to vacate his August 18, 2022 order denying the motion to dismiss, and in its stead, to issue an order granting the motion to dismiss, dissolving the amended temporary injunction, and dismissing the case. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance.

GREG NEELEY
Justice

Opinion delivered December 7, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 7, 2022**

**NO. 12-22-00279-CV**

**MCBRIDE OPERATING, LLC,**
Relator
V.

**HON. JAMES A. PAYNE, JR.,**
Respondent

___

**ORIGINAL PROCEEDING**

___

ON THIS DAY came to be heard the petition for writ of mandamus filed by McBride Operating, LLC; who is the relator in appellate cause number 12-22-00279-CV and the defendant in trial court cause number 21CV35791, pending on the docket of the 273rd Judicial District Court of Shelby County, Texas. Said petition for writ of mandamus having been filed herein on October 19, 2022, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order denying the Rule 91a motion to dismiss and, in its stead, issue an order granting the motion, dissolving the amended temporary injunction, and dismissing the

14

case; the writ will not issue unless the **HONORABLE JAMES A. PAYNE, JR.** fails to comply with this Court's order within ten (10) days from the date of this order.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*